UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA, *ex rel.*,:
STATE OF NEW YORK, *ex rel.*, WILLIAM J.:
ROLD,                                                  :
                                                     :
                         Plaintiff,      :
                                                     :
               -against-                    :
                                                     :
RAFF & BECKER, LLP; DAVID A. RAFF,:
ROBERT L. BECKER, M. PATRICIA SMITH,:
LEONARD D. POLLETTA, ANDREW M.:
CUOMO, AND STATE OF NEW YORK.    :
                                                     :
                         Defendants.    :
------------------------------------------------------------ x

**MEMORANDUM AND ORDER**
11-CV-6374 (DLI) (VVP)

**DORA L. IRIZARRY, U.S. District Judge:**

       This action was commenced by Relator-Plaintiff Hon. William J. Rold ("Plaintiff") on behalf of himself, the State of New York, and the United States, pursuant to the *qui tam* provisions of the New York State False Claims Act, N.Y. State Fin. §§ 187-194 and the False Claims Act, 31 U.S.C. §§ 3729-33 ("Federal False Claims Act"). Plaintiff alleges that New York State government defendants colluded with David A. Raff, Robert L. Becker, and Raff & Becker, LLP (collectively, the "Private Law Firm Defendants") to divert federal money meant for the unemployment compensation program in New York. Plaintiff also asserts personal claims against defendants for civil rights violations because they allegedly conspired to retaliate against Plaintiff by removing him as Chief Judge of the Unemployment Insurance Appeals Board ("UIAB"), when he attempted to blow the whistle on the activity. Defendants moved to transfer the action to the United States District Court for the Southern District of New York (the "SDNY") pursuant to 28 U.S.C. § 1404(a). Plaintiff opposes the motion. For the reasons set forth below, defendants' motion is granted.

1

## BACKGROUND

### I.    Parties

Plaintiff was the Chief Judge of the UIAB from September of 2007 until he was removed on January 6, 2010.    (Amend. Complaint ("Compl.") ¶¶ 5, 24, Doc. Entry No. 64.) Unemployment compensation is administered by the New York State Department of Labor and claimants who are dissatisfied with a decision on their claim may request a fair hearing before the UIAB.  (*Id*. ¶ 29.)  Defendant Raff & Becker, LLP is a law firm with its main offices located in New York County.  (*Id.* ¶ 6.)  Defendants David A. Raff and Robert L. Becker were partners of Raff & Becker, LLP during the relevant time period.  (*Id*. ¶ 7.)  Defendant M. Patricia Smith is the Solicitor of the United States Department of Labor and was the Commissioner of the New York State Department of Labor during the relevant time period. (*Id*. ¶ 9.)  Defendant Leonard D. Polletta is the Chairman of the UIAB and was in that position during the relevant time period. (*Id*. ¶ 10.)  Defendant Andrew M. Cuomo is the Governor of the State of New York and was the Attorney General of the State of New York during the relevant time period. (*Id*. ¶ 11.)

### II.    Relevant Facts and Procedural History

This dispute arose out of disagreements over the implementation of a consent decree in the related consolidated cases of *Barcia v. Sitkin*, 79 Civ. 5831 (SDNY), *Espinosa v. Sitkin*, 79 Civ. 5831 (SDNY), *New York State Teachers v. Sitkin*, 79 Civ. 5899 (SDNY), and *Municipal Labor Committee v. Sitkin*, 79 Civ. 5899 (SDNY)[1] (collectively, the "*Barcia* Litigation") and the subsequent alleged retaliation for Plaintiff's whistle-blowing efforts.  The *Barcia* Litigation was a class action alleging violations of due process that was brought in the SDNY by the same Private Law Firm Defendants in this instant case against the New York State Department of

---

[1] These cases were each filed on different dates but, according to the record of the Second Circuit, share two case numbers.  *See Barcia v. Sitkin*, 367 F.3d 87, 92 n.3 (2d Cir. 2004) (listing case names, numbers, and filing dates).

Labor and the UIAB, on behalf of claimants who were denied unemployment insurance benefits. The cases were assigned to the late Honorable Robert L. Carter, U.S. District Judge for the SDNY, and subsequently transferred to Chief District Judge Loretta A. Preska.  The parties in the *Barcia* Litigation settled the cases by consent decree in 1983, agreeing to structural injunctions to provide claimants due process protections.  (*Id*. ¶ 41.)  The Private Law Firm Defendants have been involved in monitoring the injunction compliance for nearly 30 years and continue to do so today. (*Id.* ¶ 43.)  The Private Law Firm Defendants participate in the training of UIAB judges, review proposed changes to UIAB policy impacting the consent decrees, and write letters about decisions in individual cases. (*Id*. ¶ 46.)

As part of the consent decree, the UIAB was to present an Amelioration Plan aimed at fixing violations compiled from data collected by the Private Law Firm Defendants. (*Id.* ¶ 55.) Plaintiff initially was involved in developing the plan along with Defendants Smith and Polletta and established a Due Process Initiative to be implemented with the intended goal of ending disputes arising from the *Barcia* Litigation.  (*Id.* ¶¶ 54-56.)  Plaintiff alleges that the government defendants did not provide sufficient resources to execute the Due Process Initiative and instead began negotiations with the Private Law Firm Defendants on an Amelioration Plan.  (*Id.* ¶ 58.) In 2009, the Private Law Firm Defendants proposed an Amelioration Plan that Plaintiff opposed as costly and burdensome. (*Id.* ¶ 64.)  Plaintiff alleges that, as a result of his opposition to the proposed Amelioration Plan, Defendant Polletta began to subject Plaintiff to an increasingly hostile work environment.  (*Id.* ¶ 66.)  On January 6, 2010, Defendant Polletta relieved Plaintiff of his duties as Chief Judge of the UIAB, days before the final Amelioration Plan was to be presented to the UIAB Board Members.  (*Id.* ¶ 107.)

On January 6, 2010, the government defendants agreed to pay the Private Law Firm Defendants $410,000 for attorneys' fees, and Judge Carter "So Ordered" the stipulation on March 10, 2010.  (*Id.* ¶ 138.)  In 1984, after adoption of the initial consent decree, the parties to the *Barcia* Litigation submitted a stipulation providing that the Private Law Firm Defendants would submit monthly statements and that the government defendants had ten days to object or the requested fees must be paid. (*Id.* ¶ 140.)  The stipulation was still in effect during Plaintiff's tenure as Chief Judge of the UIAB and Plaintiff believes it is still in effect today.  (*Id.* ¶ 141.)  Plaintiff alleges that, during his tenure as Chief Judge of the UIAB, the Private Law Firm Defendants typically requested $70,000-$90,000 per month in on-going attorneys' fees and that between 1995 and 2003, the Private Law Firm Defendants received approximately $5.3 million, primarily for their monitoring services.  (*Id.* ¶ 144.)

On December 30, 2011, Plaintiff filed the instant action against the defendants in this Court, alleging that the government defendants colluded with the Private Law Firm Defendants to divert federal money meant for the unemployment compensation program in New York and that the government defendants retaliated against Plaintiff when he tried to report the situation, causing him loss of employment and medical benefits, depression, and stress, for all of which he now seeks declaratory and injunctive relief, treble damages, and attorneys' fees based on the Federal False Claims Act, New York False Claims Act, Constitution, New York Constitution, and the Family and Medical Leave Act.  (*Id.* at 66-71.)

On November 26, 2012, defendants moved to transfer the case to the SDNY pursuant to 28 U.S.C. § 1404(a).  Plaintiff opposed the motion, asserting that deference should be given to his choice of forum and that defendants failed to establish that a motion to transfer should be granted.  On April 5, 2013, the United States elected not to intervene as to the allegations in the

original complaint pursuant to 31 U.S.C. § 3730(b)(4)(B).  On December 28, 2012, Plaintiff filed an amended complaint under seal.  On December 5, 2013, the United States elected not to intervene as to the allegations in the amended complaint.  On December 18, 2013, Plaintiff filed an unsealed copy of the amended complaint.  On December 24, 2013, Plaintiff indicated that he intends to proceed with the causes of action set forth in the amended complaint.

## DISCUSSION

The transfer of venue statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  When making a motion to transfer venue, "[t]he party requesting transfer carries the 'burden of making out a strong case for transfer.'"  *Audiovox Corp. v. S. China Enter.*, *Inc.,*  2012 WL 3061518, at *7 (E.D.N.Y. July 26, 2012) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)); *see also In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006).  At the same time, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis."  *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

To determine whether a motion to transfer venue should be granted, the court must apply a two-pronged test: "(A) whether the action could have been brought in the proposed forum; and (B) whether the transfer would 'promote the convenience of parties and witnesses and would be in the interests of justice.'"  *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012) (quoting *Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)).  The parties do not dispute that this action could have been brought

in the SDNY, therefore the inquiry is whether the convenience and interests of justice would support the transfer.

## I.    The Proposed Transfer to the SDNY Promotes Convenience and Fairness and is in the Interest of Justice

The inquiry is whether the proposed transfer will promote convenience and fairness, and is in the interest of justice. *Nabisco, Inc. v. Brach's Confections, Inc.*, 2000 WL 1677935, at *2 (S.D.N.Y. Nov. 8, 2000).  As to this prong of the test, a court may consider the following non-exhaustive list of factors, none of which is dispositive: a) plaintiff's choice of forum; b) convenience of witnesses; c) convenience of parties; d) locus of operative facts; e) ease of access to sources of proof; f) relative means of parties; g) availability of process to compel witness attendance; h) trial efficiency and interests of justice; and i) the forum's familiarity with governing law.  *See Zaitsev v. State Farm Fire & Gas, Co.*, 2005 WL 3088326, at *1 (E.D.N.Y. Nov. 17, 2005); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006).

Here, defendants seek to transfer venue from the Eastern District of New York to the SDNY.  Given the close proximity of these venues, courts in both districts consider the following factors to be relatively neutral for the purpose of the transfer analysis: convenience of the parties, convenience of material witnesses, availability of process to compel the presence of unwilling witnesses, cost of obtaining the presence of witnesses, relative ease of access to sources of proof, calendar congestion, and where the events at issue took place.  *Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 449 (E.D.N.Y. 2011).  Therefore, the two principal issues this Court must resolve are, "(1) how much deference to give the Plaintiff's choice of forum and (2) how to weigh the interest of justice." *Id.* at 449-50.

A.     *Interest of Justice and Judicial Economy*

"The Court's consideration of whether transfer is in the interest of justice is 'based on the totality of the circumstances' . . . and 'relates primarily to issues of judicial economy.'" *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (quoting *Mitsui Marine and Fire Ins. Co. Ltd. v. Nankai Travel Intern. Co.*, 245 F. Supp. 2d 523, 527 (S.D.N.Y. 2003)).   Additionally, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004); *see also Nabisco, Inc.*, 2000 WL 1677935, at *5 ("A case should generally be transferred to the district where a related action is pending.").   Notably, "[i]ssues of judicial economy and avoiding inconsistent results in related actions can be decisive, even when most other factors would ordinarily sustain a plaintiff's choice of forum." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 2013 WL 713929, at *15 (E.D.N.Y. Feb. 28, 2013) (quotations omitted).

Plaintiff argues it is not in the interest of justice or judicial economy to transfer the action.  He claims that defendants have failed to meet their burden and he attempts to distinguish the action he brought in this Court from the *Barcia* Litigation.

Defendants argue that judicial economy is served by the fact that Chief Judge Preska already is familiar with the underlying facts of the *Barcia* Litigation and subsequent consent orders.   Plaintiff responds by noting that Chief Judge Preska has not presided over any substantive matters in the *Barcia* Litigation. (Plaintiff's Mem. in Opposition to Motion to Transfer Venue ("Pl.'s Opp.") 8, Doc. Entry No. 53.)

The SDNY court already has ruled upon the propriety of the attorneys' fees sought by the Private Law Firm Defendants in the course of supervising compliance with the 1983 Consent Judgment and subsequent stipulations and orders.  The SDNY court also approved an award of $410,000 in attorneys' fees earned by the Private Law Firm Defendants as a result of the litigation leading up to the Amelioration Plan.  However, Plaintiff claims that he is not arguing about the propriety of the Amelioration Plan or the attorneys' fees arising from the *Barcia* Litigation, but instead that the *qui tam* violation "consists of Mr. Polletta and Ms. Smith deceiving the federal government into believing that it is paying for the appeals of unemployment claimants and instead using that money to pay for monitoring purportedly designed to cure New York State's violations of the due process clause of the United States Constitution."  (Pl.'s Opp. 11.)  Plaintiff separately seeks to address civil rights claims he alleges are distinct from the *Barcia* Litigation consent decree, not pursuant to it.

Because several of the claims that Plaintiff has alleged arise out of the supervision and administration of the *Barcia* Litigation Consent Judgment and subsequent stipulations and orders, it should be heard by the court that is responsible for supervising and administering those orders.  The underlying facts of this case are entirely intertwined with the *Barcia* Litigation.  For example, the first cause of action in Plaintiff's Amended Complaint discusses attempts to prolong the "Due Process Litigation."  The SDNY is best suited to determine if actions taken in the *Barcia* Litigation or as a result of that case were appropriate or improper.  Similarly, Plaintiff further contends that he is attacking, "Raff & Becker's applications and awards of funds from New York State for inflated bills," which he describes as a "classic *qui tam* cause[] of action." (Pl.'s Opp. 15.)  This argument is precisely why the SDNY should hear this case; this Court is not the proper forum to question moneys provided pursuant to another court's orders.

Additionally, any judicial determinations arising out of this instant action as to the propriety of the implementation of the *Barcia* Litigation Consent Judgment could be inconsistent with orders by the *Barcia* court and encroach upon Chief Judge Preska's ability to supervise and administer the Consent Judgment as she deems necessary.  Plaintiff's remaining claims of alleged retaliation all relate to the underlying facts of the *Barcia* Litigation.

The Court is mindful that there are differences between the *Barcia* Litigation and the present action.  Plaintiff is not a party in the *Barcia* Litigation and brings separate, individual claims that arise out of his actions taken in connection with the *Barcia* Litigation.  "The interests of justice, however, require that the cases be related, not identical."  *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012) (noting differences between a consolidated securities class action and an ERISA action but determining transfer was proper).

B.      *Plaintiff's Choice of Forum*

"Plaintiff's choice of forum is generally accorded great weight and should not be disturbed unless other factors weigh strongly in favor of transfer."  *Brown v. New York*, 947 F. Supp. 2d 317, 325 (E.D.N.Y. 2013); *see also EasyWeb Innovations, LLC*, 2012 WL 3755410, at *4 ("It is well settled that the plaintiff's choice of forum is 'given great weight.'" (quoting *D.H. Blair & Co., Inc.*, 462 F. 3d at 107)).  As explained above, the Court finds that the transferee forum's familiarity with the *Barcia* Litigation and the interests of justice weigh heavily in favor of transfer.  Based on these factors, the Court concludes that the Plaintiff's choice of forum is not entitled to considerable weight.

C.      *Weighing the Factors*

After weighing the factors set forth above, the Court finds that transfer is warranted. Plaintiff's choice of forum is given little, if any, deference and does not weigh significantly, if at

all, in favor of Plaintiff.  The transfer of the instant action to the SDNY avoids what might otherwise raise substantial opportunities for inconsistent rulings with the *Barcia* Litigation.  The fact that the SDNY has substantial familiarity with the ongoing class actions that have continued for decades weighs heavily in favor of transfer.  Thus, the interests of justice and judicial economy heavily outweigh any deference given to the forum of Plaintiff's choice.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer venue to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1404 is granted.


SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2014

                                        _____/s/_____
                                        DORA L. IRIZARRY
                                        United States District Judge