UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.,*<br>STATE OF NEW YORK, *ex rel.,*<br>WILLIAM J. ROLD,<br><br>                 Plaintiff,<br><br>  -against-<br><br>RAFF & BECKER, LLP; DAVID A. RAFF,<br>ROBERT L. BECKER, M. PATRICIA SMITH,<br>LEONARD D. POLLETA, ANDREW M.<br>CUOMO, ERIC T. SCHNEIDERMAN,<br>COLLEEN C. GARDNER, and PETER M.<br>RIVERA,<br><br>                 Defendants. | Index No. 14 Civ. 4393 (LAP) |

**M. PATRICIA SMITH'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HER MOTION TO DISMISS**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## **TABLE OF CONTENTS**

**PAGE NO.**

TABLE OF AUTHORITIES ................................................................................................... ii-iv

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

I.      ROLD'S *QUI TAM* CLAIMS MUST BE DISMISSED ...................................................... 2

          A.      Rold's *Qui Tam* Claims Are Inadequately Pled Against Ms. Smith ........................ 2

                 1.      New York State's 9130 Forms and Quality Service Plans .......................... 3

                 2.      New York State's Employment Training Administration Reports .............. 5

                 3.      Raff & Becker's Bills .................................................................................... 6

          B.      Rold's *Qui Tam* Retaliation Claims Are Barred and Baseless ................................ 7

          C.      Rold's *Qui Tam* Claims Violate Rule 1.9 ................................................................ 8

II.     ROLD'S EMPLOYMENT CLAIMS MUST BE DISMISSED .......................................... 9

          A.      Rold's First Amendment Claim Is Impermissibly Based
                on Employee Speech .................................................................................................. 9

          B.      Rold's Substantive Due Process Claim Is Duplicative and Inadequate
                and His At-Will Status Bars His Procedural Due Process Claim .......................... 11

          C.      Rold's § 1985 Conspiracy Claims Are Vague and Implausible ............................. 12

III.    THE ELEVENTH AMENDMENT BARS ROLD'S CLAIMS AGAINST
       MS. SMITH IN HER OFFICIAL CAPACITY AS THE COMMISSIONER
       OF THE NEW YORK STATE DEPARTMENT OF LABOR ......................................... 15

CONCLUSION ........................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**PAGE NO.**

**Cases**

*Anemone v. Metro. Transp. Auth.*,
    629 F.3d 97 (2d Cir. 2011) .................................................................................. 9, 10

*Aryai v. Forfeiture Support Assoc.*,
    10 Civ. 8952 LAP, 2012 WL 10911406 (S.D.N.Y. Aug. 27, 2012) ......................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 2, 4

*Baldwin v. Franks*,
    120 U.S. 678 (1887) .................................................................................................. 12

*Baron v. Port Auth. of New York and New Jersey*,
    271 F.3d 81 (2d Cir. 2001) ................................................................................. 11, 12

*Brioch v. Incorporated Village of Southampton*,
    650 F. Supp. 2d 234 (E.D.N.Y. 2009) ...................................................................... 12

*Chahal v. Paine Webber*,
    725 F.2d 20 (2d Cir. 1984) ............................................................................... 13, 14

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ................................................................................................ 11

*D'Olimpio v. Crisafi*,
    462 F. App'x 79 (2d Cir. 2012) ........................................................................... 9, 10

*D'Olimpio v. Crisafi*,
    718 F.Supp.2d 340 (S.D.N.Y. 2010) ....................................................................... 10

*Dandar v. Church of Scientology Flag Serv. Org., Inc.*,
    551 F. App'x 965 (11th Cir. 2013) .......................................................................... 13

*Dunlop v. City of N.Y.*,
    No. 06 Civ. 0433, 2008 WL 1970002 (S.D.N.Y. May 6, 2008) .............................. 12

*Eng v. Coughlin*,
    858 F.2d 889 (2d Cir. 1988) .................................................................................... 15

*Franco v. Kelly*,
    854 F.2d 584 (2d Cir. 1988) .................................................................................... 11

*Freitag v. Ayers*,
    468 F.3d 528 (9th Cir. 2006) ................................................................................... 10

*Garcetti v. Ceballos*,
 547 U.S. 410 (2006) .................................................................................................... 10

*Geaney v. McCarron*,
 No. 01 Civ. 9260, 2003 WL 1701975 (S.D.N.Y. March 31, 2003) ................................ 12, 13

*Haddle v. Garrison*,
 525 U.S. 121 (1998) .................................................................................................... 14

*Harris v. Mills*,
 572 F.3d 66 (2d Cir. 2009) ........................................................................................... 12

*Jones v. Coughlin*,
 45 F.3d 677 (2d Cir. 1995) ........................................................................................... 11

*Pabon v. N.Y. City Transit Auth.*,
 703 F. Supp. 2d 188 (E.D.N.Y. 2010) .......................................................................... 14

*Rivers v. Katz*,
 67 N.Y.2d 485 (Ct. App. 1986) .................................................................................... 12

*U.S. ex rel. Farmer v. City of Houston*,
 523 F.3d 333 (5th Cir. 2008) ......................................................................................... 5

*U.S. ex rel. Feldman v. Van Gorp*,
 697 F.3d 78 (2d Cir. 2012) ............................................................................................ 4

*U.S. ex rel. Kirk v Schindler Elevator Corp.*,
 601 F.3d 94 (2d Cir. 2010) ......................................................................................... 5, 6

*U.S. ex rel. Lamers v. City of Green Bay*,
 168 F.3d 1013 (7th Cir. 1999) ..................................................................................... 3, 5

*U.S. ex rel. Moore v. Cmty. Health Servs., Inc.*,
 09 Civ. 1127, 2012 WL 1069474 (D. Conn Mar. 29, 2012) .......................................... 8

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,
 389 F.3d 1251 (D.C. Cir 2004) ................................................................................... 2, 5

*United States v. Quest Diagnostics Inc.*,
 734 F3d 154 (2d Cir 2013) .......................................................................................... 8, 9

*United States v. Stein*,
 495 F. Supp. 2d 390 (S.D.N.Y. 2007) .......................................................................... 11

*Vega v. Artus*,
 610 F. Supp. 2d 185 (N.D.N.Y. 2009) ......................................................................... 12

*Webb v. Goord,*
 340 F.3d 105 (2d Cir. 2003) ........................................................................................ 12

*Yesudian ex rel. U.S. v. Howard Univ.*,
　270 F. 3d 969 (D.C.Cir. 2001) ........................................................................................... 7

**Statutes**

31 U.S.C. § 3729(b)(2) ............................................................................................................ 3

31 U.S.C. § 3730(h) ................................................................................................................ 7

42 U.S.C. § 1985(2) ..................................................................................................... 12, 13, 14

**Rules and Regulations**

Fed. R. Civ. P. 9(b) .......................................................................................................... 2, 3, 5

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2, 4, 6

N.Y. Exec. Law § 55(1) .......................................................................................................... 9, 10

Public Officers Law § 17 ........................................................................................................ 7

Patricia M. Smith submits this reply brief in further support of her motion to dismiss Plaintiff-Relator William J. Rold's Second Amended Complaint ("SAC"). Dkt. 106.

## PRELIMINARY STATEMENT

Rold's sprawling opposition brief illustrates the fundamental truth about his now second-amended complaint: it is not a lawsuit—it is the continuation of a policy debate by other means. Unable to convince his colleagues at New York's Unemployment Insurance Appeal Board ("UIAB") to adopt his views concerning the best way to sunset a consent decree, report Board statistics, or execute disciplinary matters, as a high-level employee on the inside, Rold now tries to impose his views on those topics through litigation, from the outside. Rold may allege the substance of his objectives, and the manner in which he pursued them as Chief Judge of the UIAB, are what led to his termination. But disagreeing with Rold was not unlawful, and demanding that he fall into line with the directive of his superiors does not give rise to a constitutional claim.

In this case, Rold seeks to cast his obvious professional failures into swirling theories of a "hybrid" *qui tam*/civil rights complaint. He fails to allege a single viable claim against Ms. Smith. Rold does not articulate a coherent theory of how any specific act she undertook furthered the assorted conspiracies he alleges. In an attempt to summarize Ms. Smith's conduct that he alleges supports his claims, Rold principally points to three things: excluding him from negotiations to end the *Barcia* monitoring; disagreeing with his approach to disciplining Judge Mammen; and failing to protect him from what he claims was a hostile work environment. None of these allegations, even if accepted as true, grounds a false-claim action or civil rights case against Ms. Smith as part of the omnibus acts of the "Government Defendants." Each of Rold's theories fails to state a claim against Ms. Smith in her personal capacity and is barred against her in her official capacity.

Rold's Second Amended Complaint should be denied with prejudice.

## ARGUMENT

Despite ten pages of argument concerning the standard for a motion to dismiss, Rold cannot change the bedrock requirement that his "complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). And, although his complaint's allegations are assumed true, its "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Notwithstanding Rold's plea to "apply a 'relaxed' Rule 9(b) [standard because he] . . . is not in a position to know specific facts until after discovery," Op. Br. at 46-47, his pleadings are characterized by an impermissible absence of detail concerning critical elements of his claims which is "an especially surprising deficiency given that [he] worked for . . . [defendants] for" three years. *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004).[1]

Judged against the standard of plausibility, Rold's claims against Ms. Smith must be dismissed. Neither his *qui tam* claims nor his civil rights claims survive Rule 12(b)(6), and both his official capacity claims and state law claims are barred by the Eleventh Amendment.

**I.    ROLD'S *QUI TAM* CLAIMS MUST BE DISMISSED**

Rold's state and federal false-claim allegations fail because he does not adequately allege false claims or retaliation and because he improperly relies on client confidences.

**A.    Rold's *Qui Tam* Claims Are Inadequately Pled Against Ms. Smith**

Rold's three false-claim theories—based on New York's reports of UIAB spending and appeals and on approval of Raff & Becker's court-ordered attorneys' fees in the *Barcia*

---

[1]    "¶" refers to the Second Amended Complaint, dated December 28, 2012. Dkt. 106. Its allegations are assumed to be true for purposes of this motion only. "Br." and "S.Br." refer to Ms. Smith's brief and supplemental brief in support of her motion to dismiss. Dkt. 106; 141. "Op. Br." refers to Rold's Opposition Brief. Dkt. 114.

2

litigation—fail for two interconnected reasons. *See* Br. at 12. First, Rold fails to allege that Ms. Smith actually submitted *any* claims to the federal government or to articulate what role Ms. Smith had in any conspiracy to submit a claim. Second, the aspects of the various forms and bills that he highlights are not "false" within the meaning of the relevant statutes; they are the continuation of policy debates that were overruled in the course of Rold's tenure at the UIAB.

### 1. New York State's 9130 Forms and Quality Service Plans

Rold's first *qui tam* theory—based on reporting of funds spent on *Barcia* monitoring as UIAB administration funds, Op. Br. 60-68—fails to allege "falsity" or to explain what role, if any, Ms. Smith had in making any allegedly false statement. Money spent on *Barcia* administration is correctly reported as money spent on UIAB administration because the *Barcia* activity is court-ordered to ensure UIAB compliance with due process. The UIAB's disagreement with Rold's semantic distinction between *Barcia* administration and UIAB administration does not give rise to a viable false-claims case. *See U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("differences in interpretation growing out of a disputed legal question are . . . not false under the FCA") (citation omitted). His vague conspiracy allegations concerning "Government Defendants" fail the standard in Fed. R. Civ. P. 9(b), and fail to establish that Ms. Smith made "a demand for payment or reimbursement from the government," 31 U.S.C. § 3729(b)(2). *See* Br. at 9; S.Br. at 4.[2]

Unable to set forth the details of his meandering *Barcia*-related conspiracy theory—namely, who did what when—Rold argues that "[i]t is enough" to survive a motion to dismiss that he has alleged

> that each [defendant] knew that Raff & Becker's fees were
> unreasonable and paid without proper oversight, that the *Barcia*

---

[2] Rold's exegesis on *respondeat superior* liability has no bearing here, either. Op. Br. at 98-100. Rold makes no attempt to apply *respondeat superior* to his theories in general or explain how the doctrine applies to Ms. Smith's liability, in particular.

3

> litigation was diverting resources from the UIAB's federal grant, that the [six] Government Defendants were exaggerating the timeliness and the numbers of cases resolved, and that the [six] Government Defendants were filing false certifications with the USDoL to perpetuate that grant. The collusive adoption of the Amelioration Plan is just one overt act illustrating this scheme and creating joint and several liability.

Op. Br. at 52. When viewed through the lens of Ms. Smith's liability, however, the inadequacy of Rold's allegations is clear. Even if it were true that Ms. Smith knew about (i) the "unreasonable" nature of Raff & Becker's bills; (ii) the reporting of *Barcia* administration expenses as UIAB administration expenses; and (iii) the state's administrative procedures with respect to counting and dating cases, a claim of conspiracy to submit false claims still does not lie absent an explanation of what, exactly, Ms. Smith did with this alleged knowledge. The Complaint contains no such allegation. Rold's invocation of the standard from the statute itself ("defendants . . . knew they were presenting false information support their federal UI Program applications money, or were being deliberately indifferent, or were acting recklessly," Op. Br. at 59) is exactly the kind of bald, boiler-plate appeal to the legal elements of a claim that is inadequate to defeat dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

Rold's claim also fails because, unlike the blatant fraud in *U.S. ex rel. Feldman v. Van Gorp*, 697 F.3d 78, 86-87 (2d Cir. 2012)—his principal authority—New York's use of federal funds for court-ordered UIAB administration, pursuant to *Barcia*, is not a "diver[sion] … from [the fund's] intended purpose." Op. Br. at 57. In *Feldman*, Cornell University's application for funds was found to be materially misstated because, among other things, "some of the faculty members identified as 'Key Personnel' in the initial application did not in fact contribute in any substantive way to the fellowship program," the school's "curriculum outlined in the initial grant application was never implemented," and "research and clinical training described in the initial grant application differed significantly from the actual training received." *Feldman*, 697 F.3d at

4

83. These facts could hardly be more different from those alleged here, where, at worst, Rold suggest *mismanagement* of federal funds, as opposed to "diversion" of them. It is not a "diversion" of federal UIAB funds to spend those funds improving due process rights under the UIAB.

### 2.     New York State's Employment Training Administration Reports

Because Rold's opposition brief blends his discussion of his first and second False Claim Act theories, he sets forth no independent defense of his UIAB administrative reporting claim separate from that advanced in relation to his *Barcia*-related claims.

As with his *Barcia*-related claims, Rold's critique of the way New York reported the number and timing of UIAB appeals fails to establish falsity; at most, it presents a theoretical argument over how certain acts are categorized. Nor does Rold "explain[] the role" Ms. Smith played in the alleged scheme. *U.S. ex rel. Williams*, 389 F.3d at 1257. His allegation that Ms. Smith "did nothing to reconcile" the statistical disparities that he reported to her, ¶ 244, does not meet the requirements of Rule 9(b). And his allegation that she failed to respond to his contemporaneous complaints also does not expose her to liability under the FCA,. *See, e.g.*, *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 339 (5th Cir. 2008); *U.S. ex rel. Lamers*, 168 F.3d at 1018; *see* Br. at 11; S.Br. at 4.

Rold's theory of implied false certification based on the reporting of appeal timeliness is contradicted by his own pleadings and authority. In *U.S. ex rel. Kirk v Schindler Elevator Corp.*, 601 F.3d 94, 114 (2d Cir. 2010), Rold's principal case, the court defined an implied false certification as one where "a statute *expressly* conditions payment on compliance with a given statute or regulation, and the contractor, while failing to comply with the statute or regulation (and while knowing that compliance is required), submits a claim for payment." *Id.* (emphasis added). But Rold's Second Amended Complaint ("SAC") expressly concedes that "[t]he

5

regulations do not recite a standard for the timely resolution of higher level appeals." ¶ 97. Absent such an express statutory "standard," Rold's implied" false-certification theory fails as a matter of law. *Kirk*, 601 F.3d at 114.[3]

Finally, Rold's invocation of the USDoL's imposition of a "Corrective Action Plan" is another straw man. Rold argues that it is "immaterial for federal False Claims Act purposes whether the USDoL has attempted to decertify New York's unemployment grant or has taken action beyond imposing a 'Corrective Action Plan.'" Op. Br. at 59. The problem for Rold's FCA claims is not that the Department of Labor has declined to decertify the UIAB (although it has); the problem is that it has already placed the UIAB on a Corrective Action Plan *for the very deficiencies (backlogs and delays) during the very time periods that Rold relies upon as false claims*. ¶¶ 108-09. The SAC having affirmatively pleaded both that the government was aware of these issues (by category), and that the government responded by placing New York on a plan, its claim that the Government Defendants conspired to misstate statistics about these same issues in such a way that would not ameliorate the Corrective Action Plan but would have some other incremental, undefined effect, is implausible speculation. Such speculation is not enough to survive a Rule 12(b)(6) motion.

### 3.  Raff & Becker's Bills

Rold's argument that Ms. Smith is liable as the Commissioner of the Department of Labor for a conspiracy to submit legal bills for New York's litigation adversary—Raff & Becker—is not plausible, coherent, or sufficiently detailed to state a claim against her. *See* Br. at 11-12; S.Br. at 5.

---

[3]   *Kirk* is also distinguishable on its facts. There, the defendant was alleged to have had no affirmative action plan or method for identifying veterans when it was required to have both. 601 F.3d 94 at 100. Here, Rold's claims are based on the impact of different interpretations of administrative statistics from an indefinite number of re-filed appeals and re-published opinions.

Rold argues that the "Government Defendants" are liable for a conspiracy to submit Raff & Becker's bills because, "by rubber-stamping them and then falsely stating they are 'required' to be paid, [they] 'caused' such claims to be presented for payment." Op. Br. at 64. Rold does not allege that Ms. Smith personally certified the Raff & Becker bills. Instead, he argues that she is liable for false claims because she "was obligated to 'approve' (*i.e.*, review) the fees under Section 17 of the Public Officers Law." Op. Br. at 64. But the alleged "obligation" to "review" claims is not a false claim itself, and Rold's other allegations do not amount to a plausible conspiracy to submit a false claim based on Raff & Becker bills.

### B. Rold's *Qui Tam* Retaliation Claims Are Barred and Baseless

Rold's employer-retaliation claims based on his alleged false-claim complaints fail against Ms. Smith because (i) she was not his "employer" under 31 U.S.C. § 3730(h); (ii) the matters he complained about could not have led to a viable false-claim action; and (iii) neither carrying out his job duties nor filing a post-termination complaint with the Governor's office satisfies the requirement for notice under the False Claims Act. *See* Br. at 12-13.

Rold concedes that even post-2009 cases have interpreted "employer" as used in 31 U.S.C. § 3730(h) to exclude individuals sued in their personal capacities. Op. Br. at 100-03. His effort to distinguish *Yesudian ex rel. United States v. Howard University*, 270 F. 3d 969 (D.C.Cir. 2001), on the basis that Ms. Smith is not a "mere supervisor" because she "plainly can reinstate" him fails because Ms. Smith is no longer an employee of New York. Op. Br. at 101. And, despite his effort to limit *Yesudian* as not addressing government employers, Rold provides no authority for his argument that § 3730(h) allows for suit against individuals in their personal capacity. Rold acknowledges, as he must, that this court has come to the opposite conclusion in *Aryai v. Forfeiture Support Associates, Inc.*, No. 10 Civ. 8952 LAP, 2012 WL 10911406 (S.D.N.Y. Aug. 27, 2012) (Preska, J.) (dismissing FCA claim on the grounds that "amended

7

section 3730(h) does not provide a cause of action against individual defendants"). This ends the matter.

Rold also concedes that he must show he was "investigating matters that were calculated [to lead], or reasonably could have [led], to a viable FCA action." Op. Br. at 79 (*quoting U.S. ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 09 Civ. 1127, 2012 WL 1069474 at *8 (D. Conn. Mar. 29, 2012)). But, as described above, Rold fails to allege facts to show that the matters he complained about meet this standard. There could be no viable False Claim Act action against Ms. Smith based on reporting the distinction between *Barcia* administration and UIAB administration, Rold's critique of UIAB administration practices, or Raff & Becker's attorneys' fees. *See* Section I, *supra*.

Finally, Rold's argument that his grievance to Governor Cuomo "invokes *qui tam* specifically" does not provide Ms. Smith notice of his claims because, according to the SAC, "Rold filed a grievance under Executive Order 42 after being relieved as Chief ALJ." ¶ 202 (emphasis added). Rold's purported notice to the Governor's Office after he was terminated is not notice to Ms. Smith of his alleged *qui tam* activity before he was terminated. Op. Br. at 79.

### C. Rold's *Qui Tam* Claims Violate Rule 1.9

Recognizing the danger to his status as relator presented by *United States v. Quest Diagnostics Inc.*, 734 F.3d 154, 165 (2d Cir. 2013), Rold deploys six different arguments to try to justify his stature as a proper relator, notwithstanding his role as "general counsel to the UIAB and a key advisor in litigation," ¶ 24. None of these arguments is convincing.

Rold's straw man argument that he was never any of the Defendants' personal attorney, Op. Br. at 108-12, simply sidesteps the impact of his role as counsel to the UAIB. His assertion that he did not "switch sides," Op. Br. at 112-13, is belied by the fact that he previously provided litigation advice to those he is now suing for disagreeing with that advice. Rold's claim that he

8

has not breached—and will not breach—client confidences, Op. Br. at 113-17, rings hollow, given his presentation of litigation advice (his Due Process initiative etc.) as a core aspect of his retaliation claim. His waiver argument, limited to the content of his pleadings, does not address the impact of his use of client confidences to prepare and prosecute his claims. Op. Br. at 117-18. And his policy appeal to "public transparency" fails to adequately distinguish *Quest*. Op. Br. at 118-20.

More fundamentally, none of these arguments can adequately justify the patent impropriety of Rold's use of information learned in his role as attorney for the UIAB to critique its litigation strategy, legal decisions regarding reporting, and decisions concerning its objections to its adversary's legal bills that ground his False Claim Act claims.

## II.  ROLD'S EMPLOYMENT CLAIMS MUST BE DISMISSED

Rold has now voluntarily dismissed his contract claim (Twelfth Claim) and Family and Medical Leave Act Claim (Tenth Claim). His remaining four civil rights claims against Ms. Smith (First Amendment, substantive and procedural due process, and conspiracy) should be dismissed as well.

### A.   Rold's First Amendment Claim Is Impermissibly Based on Employee Speech

Rold's First Amendment claim fails because it is based on "speech" (complaining about Raff & Becker's attorneys' fees, the Amelioration Plan, and Judge Mammen) that was an essential part of his job duties at UIAB. *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 116 (2d Cir. 2011); *D'Olimpio v. Crisafi*, 462 F. App'x 79 (2d Cir. 2012); Br. at 15-18.

Rold's opposition does not establish that his speech about Judge Mammen to the inspector general and Third Department was outside his job duties, nor could it. The Second Circuit has squarely held that complaints to the Inspector General—like those Rold invokes—by employees covered under section 55(1) of the New York Executive Law—like Rold—are not

<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>

protected by the First Amendment because the complaints are made pursuant to their job duties. *D'Olimpio*, 462 F. App'x at *80.[4] Rold's characterization of this holding as mere dicta, Op. Br. at 76 n.55, is wrong. The only issue the Second Circuit addressed on appeal was whether complaints to the Inspector General by employees covered by section 55(1) are protected by the First Amendment. *D'Olimpio*, 462 F. App'x at *80. Rold's only other effort to address *D'Olimpio* (a footnote argument that it was "contrary to [the Supreme Court's decision in] *Garcetti* [*v. Ceballos*, 547 U.S. 410 (2006)]," Op. Br. at 76 n.55) is unavailing. *D'Olimpio* controls; Rold's conjecture does not. Rold's complaints to the Third Department were also part of his job duties because, as he alleges, he was bound to make these complaints because of his job as attorney for the UIAB. Op. Br. at 74.

Similarly, Rold's ongoing complaints about how the UIAB was handling the *Barcia* litigation and Raff & Becker's fees did not transform his employee speech to "citizen speech" just because he was asked to stop. The Second Circuit has squarely held that "[w]hen a government employee concededly engages in speech pursuant to his official duties, the fact that he persists in such speech after a supervisor has told him to stop does not, without more, transform his speech into protected speech." *Anemone.*, 629 F.3d at 116. Given the clear authority from this circuit, Rold's appeal to out-of-circuit cases is unpersuasive. Op. Br. at 72-73.

Finally, Rold's observation that "it is an open question whether and how the New York Court of Appeals will apply *Garcetti* to someone in Rold's circumstances," Op. Br. at 87, is not enough to prevent dismissal of his claims. Rold offers no support for his suggestion that the New York Constitution offers protection for his employee speech that the federal Constitution does

---

[4] *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006), a case that Rold repeatedly cites, is not applicable to New York employees subject to New York Executive Law § 55(1). *D'Olimpio v. Crisafi*, 718 F.Supp.2d 340, 354 (S.D.N.Y. 2010).

not, and, in any event, Rold's complaint does not include a claim under the state Constitution. *See* ¶¶ 286-90 (failing to mention any provision of the New York State Constitution).

### B. Rold's Substantive Due Process Claim Is Duplicative and Inadequate and His At-Will Status Bars His Procedural Due Process Claim

Rold's substantive due process claim against Ms. Smith—based on being fired for speech relating to his job—fails because it is duplicative of his meritless First Amendment retaliation claim, and, in any event, the alleged conduct does not "shock the conscience." *See Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Baron v. Port Auth. of N.Y. & New Jersey*, 271 F.3d 81, 89 (2d Cir. 2001); Br. at 19. Rold's procedural due process claim is fatally undermined by his status as an at-will government employee. *See Baron*, 271 F.3d at 89; Br. at 19-20.

Contrary to Rold's argument in opposition, not every form of "retaliation" by the government violates substantive due process. Op. Br. at 84. Retaliation only violates substantive due process when the retaliation is in response to the exercise of a constitutional right. *See Franco*, 854 F.2d at 590; *Jones v. Coughlin*, 45 F.3d 677, 678-80 (2d Cir. 1995). Rold's due process claim that he was retaliated against for exercising his First Amendment rights, Op. Br. at 68-78, fails for the same reasons that his direct claims under the First Amendment do. *See supra* Part II(A).

Rold's effort to dilute the standard for his substantive due process claim from "shocks the conscience" to "deliberate indifference" rests on one district court case, *United States v. Stein*, 495 F. Supp. 2d 390 (S.D.N.Y. 2007), that explicitly conducted its analysis under the "shocks the conscience" framework. *Id.* at 412-13. While *Stein* observed that some actions that are deliberately indifferent to constitutional rights may shock the conscience, *id.* at 414, nothing Rold alleges here meets that standard. Rold merely contends that "the Government Defendants" knew about his complaints for several years. Op. Br. at 85. Not responding to an employee's

11

complaints in the manner that the employee would like does not "shock the conscience." Rold's substantive due process claim must be dismissed.

Rold's only answer to the barrier that his at-will status presents to his procedural due process claim is to complain that his post-termination process was not "meaningful." *Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009). But *Harris* involved the revocation of a medical license (where a property interest exists), not the termination of an at-will government employee (where there is no property interest, *see Baron*, 271 F.3d at 89). And Ms. Smith is not a proper defendant for his complaints about the response to his grievance to the Governor.

Finally, Rold's appeal to the possibility that the New York Constitution will be more protective of his due process rights than the federal constitution is not enough to prevent dismissal of those claims. Rold's only support for his conjecture—a thirty-year-old decision on the "safeguards attaching to the involuntary treatment of the mentally ill"—is not enough. Op. Br. at 86 (citing *Rivers v. Katz*, 67 N.Y.2d 485 (Ct. App. 1986)).

### C. Rold's § 1985 Conspiracy Claims Are Vague and Implausible

Rold's conspiracy claims against Smith under 42 U.S.C. § 1985(2) fail because he does not "provide [a] factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 111 (2d Cir. 2003) (internal quotation marks omitted).[5] Additionally, Rold's complaint fails to allege with particularity that Smith conspired to prevent him from participating as a party or a witness in a federal court proceeding, a necessary element of a claim under § 1985(2). *See*

---

[5]  Even had Rold alleged, in more than "the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants," *Webb*, 340 F.3d at 111, his claim would fail in light of the intracorporate conspiracy doctrine, which "bars conspiracy claims alleging concerted action by employees and/or the heads of various departments within a single [public] entity . . . ." *Brioch v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (quoting *Dunlop v. City of N.Y.*, No. 06 Civ. 0433, 2008 WL 1970002, at *9 (S.D.N.Y. May 6, 2008)); *see also Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (applying doctrine to employees of New York State).

*Geaney v. McCarron*, No. 01 Civ. 9260, 2003 WL 1701975, at *4 (S.D.N.Y. March 31, 2003). Rold also does not allege that Smith "resist[ed] some positive assertion of authority by the government," *Baldwin v. Franks*, 120 U.S. 678, 693 (1887), as required for a violation of what Rold refers to as the "uncodified provision of Section 2 of the Civil Rights Act of 1971," Op. Br. at 82. None of Rold's discussion of these claims in his opposition brief resolves any of these problems.

That Rold was "in some way connected to a federal court proceeding" does not "qualify [him] as a witness within the meaning of § 1985(2)"; only "'a person who has taken the stand or is under subpoena . . . [or] whom a party intends to call as a witness'" is protected by the provision. *Geaney*, 2003 WL 1701975 at *4 (quoting *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 24 (2d Cir. 1984)). In his opposition brief, Rold feebly elaborates on the bald allegation in his complaint that he was "a potential witness in the on-going *Barcia* Litigation," ¶ 83, with the statement—unsupported by any allegation in the complaint—that "his predecessor as Chief Judge had given evidence on many occasions," Op. Br. at 81. Even if that had been alleged in the complaint and could now be considered, the "fact" that another man who once held Rold's position submitted testimony during the course of a 30-year litigation is insufficient to establish that Rold was a potential witness in the case, let alone that any action taken by Ms. Smith was designed to prevent him from testifying. Nor does it matter that, as Rold emphasizes, he was "an agent of a named party, inasmuch as he was bound by the *Barcia* injunctions." Op. Br. at 81. Section 1985(2) protects only those parties or witnesses who are deterred from attending, or providing testimony in connection with, federal court proceedings, or who are injured as a result of their attendance or testimony in court. 42 U.S.C. § 1985(2); *see also Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 551 F. App'x 965, 967 (11th Cir. 2013) (§ 1985(2)'s

13

protection does not extend to agents of parties). Merely being an employee of a party does not render one a "witness" in the sense of § 1985(2).

Most critically, Rold has not identified a single instance in which he was called upon to testify, faced the prospect of testifying, attempted to testify, or might have been expected to testify in court but for Smith's conduct. *See Pabon v. N.Y. City Transit Auth.*, 703 F. Supp. 2d 188, 202 (E.D.N.Y. 2010) (no liability under § 1985(2) where no facts support "naked assertion" that plaintiff was a witness). Indeed, according to his complaint, defendants sought to prevent him not from *testifying* in the *Barcia* litigation, but from *negotiating* on behalf of and *advising* his employer in connection with that litigation. *See* ¶¶ 24; 297. By contrast, in each of the cases cited in Rold's opposition brief in which a § 1985(2) claim was allowed to proceed, the plaintiff identified specific testimony that defendants conspired to prevent. *See, e.g., Haddle v. Garrison*, 525 U.S. 121, 126 (1998) (plaintiff retaliated against for obeying grand jury subpoena to provide testimony in federal criminal proceeding); *Chahal*, 725 F.2d at 23 (plaintiff pressured into withdrawing affidavit from federal lawsuit).

Nor do Rold's allegations that he was terminated after he complained about Raff & Becker's fees and the Department of Labor's reporting practices make out a claim under what he calls "the uncodified provision [of] Section 2," despite his unsupported assertion that his complaints "were all protected activity," Op. Br. at 82-83. An employer who retaliates against a whistleblower cannot be held liable for conspiring to use "force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States," 17 Stat. 13, ch. 22, sec. 2, unless, presumably, the plaintiff can show that the employer used actual force or the threat of force, none of which is alleged here. Rold cites no authority from this or any other circuit holding otherwise. The Supreme Court, construing "a re-enactment" of the provision that Rold now invokes explained that "hindering or delaying the 'execution' of any law of the United

14

States" requires more than "[a] mere violation of law": "there must be an attempt to prevent the actual exercise of authority" directed against the federal government itself. *Baldwin*, 120 U.S. at 693. Rold has not alleged that Smith conspired to inhibit the actions of any federal officer attempting to execute the law.

### III. THE ELEVENTH AMENDMENT BARS ROLD'S CLAIMS AGAINST MS. SMITH IN HER OFFICIAL CAPACITY AS THE COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF LABOR

Rold's damages claims against Ms. Smith in her official capacity must be dismissed pursuant to the Eleventh Amendment. *Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir. 1988) ("[A] suit brought by a party for damages for past injuries against a state official in his official capacity for actions illegal under federal law is barred, even when the state official is the named defendant."). And, as his recent addition of the current Commissioner of Labor tacitly acknowledges, Rold's injunctive relief claims against Ms. Smith fail because she no longer occupies a position in state government. *See* Br. at 25. *Cf.* Op. Br. at 89-90.

### CONCLUSION

For the forgoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: October 15, 2014

EMERY CELLI BRINCKERHOFF
& ABADY LLP


_____/s/_____
Andrew G. Celli, Jr.
O. Andrew F. Wilson
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for M. Patricia Smith*