UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

UNITED STATES OF AMERICA, ex rel., STATE
OF NEW YORK, ex rel., and WILLIAM J. ROLD,

                      Plaintiffs,

          – against –

RAFF & BECKER, LLP, DAVID A. RAFF,
ROBERT L. BECKER, M. PATRICIA SMITH,
LEONARD D. POLLETTA, ANDREW M.
CUOMO, ERIC T. SCHNEIDERMAN,
COLLEEN C. GARDNER, and PETER M.
RIVERA,

                    Defendants.

------------------------------------------------------------- X

Docket No. 14-CV-04393 (LAP)

Oral Argument Requested

# **DEFENDANT LEONARD D. POLLETTA'S REPLY BRIEF**

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
1350 Broadway, Suite 501
P.O. Box 822
New York, New York 10018
212-239-4999

*Attorneys for Defendant Leonard D. Polletta*

On the Brief:   Hanan B. Kolko
                Richard. F. X. Guay
                Melissa S. Woods

Date of Service:  October 16, 2014

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

THE SAC DOES NOT PROPERLY PLEAD QUI TAM CLAIMS ....................................... 1

LP IS NOT INDIVIDUALLY LIABLE ON THE QUI TAM CLAIMS .................................... 4

WR CANNOT ETHICALLY PURSUE HIS QUI TAM CLAIMS ......................................... 7

CONTRARY TO WR'S ASSERTION, THERE IS NO INDIVIDUAL
LIABILITY FOR THE FCA AND NYFCA RETALIATION CLAIMS ................................. 11

THE PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS ......................... 13

WR'S CLAIM UNDER THE STATE CONSTITUTION................................................... 13

WR'S CLAIM UNDER 42 U.S.C. §1985(2) ..................................................... 14

WR'S FIRST AMENDMENT CLAIM FAILS ................................................................. 15

THE ELEVENTH AMENDMENT BARS ALL OFFICIAL CAPACITY
CLAIMS ........................................................................................................ 19

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alexander v. Gilmore,
  202 F.Supp. 2d 478 (E.D. Va. 2002) ..........................................................5

Allen v. Antal,
  No. 12 Civ. 8024 (NSR), 2014 WL 2526977 (S.D.N.Y. Mar. 13, 2014) ..............13-14

Anemone v. Metropolitan Transportation Authority,
  629 F.3d 97 (2d Cir. 2011) ..................................................................18, 19

Baldwin v. Franks,
  120 U.S. 678 (1987) ..............................................................................15

Casey v. West Las Vegas Independent School District,
  473 F.3d 1323 (10th Cir. 2007) .........................................................18, 19

Dahlia v. Rodriguez,
  735 F.3d 1060 (9th Cir. 2013) ...........................................................18, 19

Dandar v. Church of Scientology Flag Serv. Org.,
  551 Fed. App'x 965 (11th Cir. 2013)..........................................................14

Di Giovanni v. Beth Israel Med. Ctr.,
  651 F. Supp. 2d 193 (S.D.N.Y. 2009) ......................................................13

Fisch v. New Heights Acad. Charter Sch.,
  No. 12 Civ. 2033 (DLC), 2012 WL 4049959 (S.D.N.Y. Sept. 13, 2012)..................12

Garcetti v. Ceballos,
  547 U.S. 410 (2006) .....................................................................15, 18, 19

Geaney v. McCarron,
  No. 01 Civ. 9260 (BSJ), 2003 WL 1701975 (S.D.N.Y. Mar. 31, 2003) ....................14

In re Grand Jury Proceedings,
  219 F.3d 175 (2d Cir. 2000) ....................................................................11

Guallpa v. NY Pro Signs Inc.,
  No. 11 Civ. 3133 (LGS)(FM), 2014 WL 2200393 (S.D.N.Y. May 27,
  2014), report and recommendation adopted 2014 WL 4105948
  (S.D.N.Y. Aug. 18, 2014)...........................................................................4

Harris v. Mills,
  572 F.3d 66 (2d Cir. 2009) ......................................................................13

Huang v. Rector and Visitors of Univ. of Va.,
    896 F. Supp. 2d 524 (W.D. Va. 2012) ....................................................12

Irizarry v. Quiros,
    722 F.2d 869 (1st Cir. 1983).................................................................14

Jackler v. Byrne,
    658 F.3d 225 (2d Cir. 2011) .......................................................15, 16, 17

Landfield v. Tamares Real Estate Holdings, Inc.,
    No. 105149/11, 2012 WL 3135052 (N.Y. Sup. Ct. July 23, 2012) ...........12

Lizzi v. Alexander,
    255 F.3d 128 (4th Cir. 2001) ...................................................................5

Malley-Duff & Assoc., Inc. v. Crown Life Insurance Co.,
    792 F.2d 341 (3d Cir. 1986) ..................................................................14

Matthews v. City of N.Y.,
    957 F.Supp. 2d 442 (S.D.N.Y. 2013)................................................16, 17

Mikes v. Straus
    274 F.3d 687 (2d Cir. 2001) ...............................................................1, 3

Monsour v. New York State Office for People with Developmental
        Disabilities,
    No. 1:13-CV-0336 (TJM)(CFH), 2014 WL 975604
    (N.D.N.Y. Mar. 12, 2014)................................................................11-12

Rodriguez v. Int'l Leadership Charter Sch.,
    No. 08 Civ. 1012 (PAC), 2009 WL 860622 (S.D.N.Y. Mar. 30, 2009) ......17

Rosenblatt v. City of New York,
    No. 05 Civ. 5521 (GEL), 2007 WL 2197835 (S.D.N.Y. July 31, 2007).......17

Rotundo v. Village of Yorkville,
    No. 6:09-CV-1262, 2011 WL 838892 (N.D.N.Y. Mar. 4, 2011).................14

Stoner v. Santa Clara County Office of Education,
    502 F.3d 1116 (9th Cir. 2007) ..................................................................6

Taylor v. New York State Office for People with Developmental
        Disabilities,
    No. 1:13-CV-740 (NAM/CFH), 2014 WL 1202587
    (N.D.N.Y. Mar. 24, 2014).......................................................................12

U.S. ex rel. Assocs. Against Outlier Fraud v. Huron Consulting Grp., Inc.,
    929 F.Supp. 2d 245 (S.D.N.Y. 2013)........................................................6

U.S. ex rel. Colucci v. Beth Israel Med. Ctr.,
   785 F.Supp. 2d 303 (S.D.N.Y. 2011)............................................................2, 3

U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa,
   269 F.3d 932 (8th Cir. 2001) ....................................................................5, 6

U.S. ex rel. Graber v. City of New York,
   8 F.Supp. 2d 343 (S.D.N.Y. 1998)..........................................................5, 6

U.S. ex rel Hixson v. Health Management Systems, Inc.,
   657 F.Supp. 2d 1039 (S.D. Iowa 2009), aff'd 613 F.3d 1186
   (8th Cir. 2010) ...............................................................................................6

U.S. ex rel Honeywell, Inc. v. S. F. Hous. Auth.,
   No. C99-1936 TEH, 2001 WL 793300 (N.D. Cal. July 12, 2001)................5

U.S. ex rel. Kinney v. Stoltz,
   No. Civ.01-1287 (RHK/JMM), 2002 WL 523869 (D. Minn. Apr. 5, 2002)....5

U.S. ex rel. Moore v. Cmty. Health Servs., Inc.,
   Civil No. 3:09cv1127 (JBA), 2012 WL 1069474
   (D. Conn. Mar. 29, 2012).............................................................................12

U.S. ex rel. Parikh v. Citizens Medical Center,
   977 F. Supp. 2d 654 (S.D. Tex. 2013)........................................................5

Yesudian ex rel. U.S. v. Howard Univ.,
   270 F.3d 969 (D.C. Cir. 2001) ...................................................................12

Weintraub v. Bd. of Educ. of the City School Dist. of N.Y.,
   593 F.3d 196 (2d Cir. 2010) ...............................................................16, 18

Weintraub v. Bd. of Educ. of N.Y.,
   489 F.Supp. 2d 209 (E.D.N.Y. 2007).........................................................16

Will v. Mich. Dep't of State Police,
   491 U.S. 58 (1989)........................................................................................9

**Statutes**

20 C.F.R. §601 ....................................................................................................2

20 C.F.R. §601.1 (2014) ......................................................................................2

31 U.S.C. §3729 ...................................................................................................1

42 U.S.C. §502 .....................................................................................................2

42 U.S.C. §503 .....................................................................................................2

42 U.S.C. §1985(2) ................................................................................14

C.P.L.R. Article 78 ................................................................................13

N.Y. State Fin. Law §187 ........................................................................4

N.Y. State Fin. Law §191 ......................................................................12

N.Y. State Fin. Law §191(2) ....................................................................8

**Other Authorities**

Constitution of the State of New York .................................................13, 14

NYCLA Comm. Prof'l Ethics, Formal Op. 746 (2013) .................................7, 8

N.Y. Rules of Prof'l Conduct Rule 1.6 ................................................10, 11

N.Y. Rules of Prof'l Conduct Rule 1.6(b) ...................................................7

N.Y. Rules of Prof'l Conduct Rule 1.6(b)(2) .............................................7, 8

N.Y. Rules of Prof'l Conduct Rule 1.13 .....................................................7

OMB Circular A-87, <u>Cost Principles for State, Local, and
Indian Tribal Governments</u>, Revised (5/10/14), available at
http:www.whitehouse.gov/omb/circulars_a087_2004 ................................2

Roy Simon, <u>Simon's N.Y. Rules of Prof'l Conduct Ann</u>. (2013 ed. 2012) ........................8

INTRODUCTION

All defendants moved to dismiss WR's[1] First Amended Complaint ('FAC"). <u>See,</u> <u>e.g.,</u> Dkt 104, 106-1, 108.   WR opposed that motion and moved to file a Second Amended Complaint ("SAC").  Dkt 113, 114.  The court granted WR's motion to amend on consent of all defendants and  WR filed the SAC.  Dkt 123, 124.  Pursuant to this Court's August 18, 2014 Order, LP hereby submits this reply brief in further support of his motion to dismiss the SAC.  <u>See</u> Dkt 137.

THE SAC DOES NOT PROPERLY PLEAD QUI TAM CLAIMS

The SAC's first two claims are <u>qui tam</u> claims under 31 U.S.C. §3729, the False Claims Act ("FCA").   Contrary to WR's argument, the SAC does not state an FCA  "false certification" claim.   <u>See</u> Dkt 114-1, 57.  "Express false certification" is "a claim that falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment."  <u>Mikes v. Straus</u> 274 F.3d 687, 698 (2d Cir. 2001).  "Implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies <u>expressly</u> states the provider must comply in order to be paid."  <u>Id.</u> at 700.  (Emphasis in original).

The first <u>qui tam</u> claim asserts that the Government Defendants falsely certified to the U.S. Department of Labor ("USDOL") that all federal money received by the Unemployment Insurance Appeals Board ("UIAB") is being used to administer the state unemployment insurance ("UI") program, when some of that money is used to comply with <u>Barcia</u>. Dkt 124, ¶¶83, 261-68. However, the SAC and WR's Opposition Briefs cite no statute or regulation which defines "administration" or bars a state from using federal

---

[1] We refer to Polletta as "LP," to defendants Smith, Polletta, Cuomo, Schneiderman, Gardner, and Rivera collectively as "Government Defendants," to defendants Raff, Becker and Raff & Becker, LLP collectively as "R&B," and to plaintiff Rold as "WR."

money to comply with federal court orders compelling the state to provide due process to UI claimants.

Nothing in 42 U.S.C. §502 or §503 defines "administration" or bars a state from spending federal grants to comply with court orders requiring it to provide due process to UI claimants.  Dkt 124, ¶¶68-69.  The SAC's reliance on 20 CFR §601 is misplaced. Id., ¶¶70-75.  Section 601.1(c) merely provides that "[g]rants of funds are made to States for administration of their employment security laws if their unemployment compensation laws . . . meet required conditions of federal law."  20 C.F.R. §601.1 (2014).  That provision neither bars states from spending federal money to comply with federal court orders, nor defines "administration."  The SAC cites the "ETA Handbook," which states that a state may "include only those costs allowable under OMB Circular A-87."  ETA Handbook No. 410, at I-2; see Dkt 124, ¶79.  Under OMB Circular A-87, "legal expenses required in the administration of federal programs are allowable."  Hence all legal expenses of Barcia compliance are allowable.  OMB Circular A-87, Cost Principles for State, Local, and Indian Tribal Governments, Revised (5/10/04), at 15, available at http://www.whitehouse.gov/omb/circulars_a087_2004.

To satisfy the FCA's scienter requirement, WR must plead that LP made a false claim "knowing of its falsity."  Mikes, 274 F.3d at 695.  "Where a relator alleges that a claimant's interpretation of an ambiguous regulation renders its claims false under the FCA . . . whether a claimant acted knowingly in submitting a false claim turns on 'the reasonableness of [the claimant's] interpretation.'"  U.S. ex rel. Colucci v. Beth Israel Med. Ctr., 785 F.Supp. 2d 303, 316 (S.D.N.Y. 2011) (emphasis in original).  As the statutory and regulatory provisions upon which the SAC relies do not define

2

"administration" or bar use of federal monies to pay for compliance with court orders, the state's reporting to the USDOL that it used federal monies for "administration" is reasonable and not knowingly false.  Thus it does not give rise to an FCA <u>qui tam</u> claim. As discussed in our earlier briefs, this claim also fails as to LP because it does not allege that LP submitted false claims or describe LP's role in the alleged conspiracy to submit false claims.  Dkt 149; Dkt 108, 4-8.

The second <u>qui tam</u> claim asserts that Government Defendants "knowingly caused false certifications of timeliness to be filed" with USDOL.  Dkt 124, ¶269.  The SAC alleges that the timeliness certifications are false because when claimants request adjournments, they are told by the judges that, instead of an adjournment, their case would be dismissed but they would be granted "liberal leave to reopen" if they applied for a new hearing.  When claimants applied for a new hearing, they received "new case numbers and new hearing dates . . . permitting Government Defendants to cause false certifications to be filed that inflated the number of appeals resolved."  <u>Id.</u>, 99.  This does not state a false certification claim because WR fails to identify "the underlying statute or regulation . . . which . . . expressly states the provider must comply [with] in order to be paid."  <u>Mikes</u>, 274 F.3d at 700.  The SAC fails to identify any regulations which bar UIAB from treating requests for adjournment in this way.  <u>Colucci</u>, 785 F.Supp. 2d at 314.  Also, given the lack of specifically applicable regulations, the state's reporting of its timeliness statistics as described in the SAC is not knowingly false, and thus the SAC does not allege the requisite scienter.  <u>Id.</u>, at 316.  As discussed in our earlier briefs, this claim fails as to LP because it does not allege that LP submitted a

false claim, or explain LP's role in the alleged conspiracy to submit false claims.   Dkt 149; Dkt 108, 4-8.

WR's third claim is a <u>qui tam</u> claim under the New York False Claims Act ("NYFCA"), New York Finance Law, §§187 et seq.   That claim asserts that the Government Defendants falsely certified R&B's fee statements which sought rates that were too high, charged for partners to do what associates could have done, and spent for too much time on tasks.   Dkt 124, ¶¶125, 272.   While WR asserts the R&B partner rate of $620/hour is excessive, this Court has approved $600/hour for a 1995 law school graduate.   <u>Guallpa v. NY Pro Signs Inc.</u>, No. 11 Civ. 3133 (LGS)(FM), 2014 WL 2200393 at *10 (S.D.N.Y. May 27, 2014), <u>report and recommendation adopted</u>, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).   There is no bright line delineating when a lawyer spent "too much" time on a legal document:   lawyers will honestly differ about this.   Similarly, whether a partner or an associate should perform a task is open to interpretation.   While WR believes that lawyers should not charge for "proofreading," lawyers routinely proofread documents in the process of editing and charge for that. WR's unhappiness with R&B's fees does not transform the state's approval of those fees into a false claim.   This claim also fails as to LP because it does not allege with the required specificity LP's role in the alleged conspiracy to submit false claims.   Dkt 149; Dkt 108, 4-8.

<u>LP IS NOT INDIVIDUALLY LIABLE ON THE QUI TAM CLAIMS</u>

WR alleges that LP is individually liable on the FCA <u>qui tam</u> claims.   Dkt 114-1, 90-92.   He is wrong.   LP is not individually liable for the FCA <u>qui tam</u> claims because WR failed to plead that LP personally profited from the alleged false claim.   Relying on

U.S. ex rel. Graber v. City of New York, 8 F.Supp. 2d 343 (S.D.N.Y. 1998), one Court explained:

> In Graber, the Court indicated in dicta that FCA claims against government officials in their personal capacities should rest on allegations of personal gain . . . . This Court concludes that Graber represents the better construction of the FCA . . . The issue is . . . whether they can be sued in their personal capacity, rather than their official capacity, when there is no allegation of personal gain. Absent any clear authority on this point, we conclude that they cannot.

U.S. ex rel Honeywell, Inc. v. S. F. Hous. Auth., No. C99-1936 TEH, 2001 WL 793300 at *4-5 (N.D. Cal. July 12, 2001); see also, Alexander v. Gilmore, 202 F.Supp. 2d 478, 482 (E.D. Va. 2002); U.S. ex rel. Kinney v. Stoltz, No. Civ.01-1287 (RHK/JMM), 2002 WL 523869, at *7 n.3 (D. Minn. Apr. 5, 2002); U.S. ex rel. Parikh v. Citizens Medical Center, 977 F. Supp. 2d 654, 680 n.5 (S.D. Tex. 2013).

"[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action," Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001). WR must plead facts to suggest that in submitting the alleged false claims, LP was acting in "other than [his] official capacit[y]." Gilmore, 202 F.Supp. 2d at 482; U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936-37 (8th Cir. 2001). The Gaudineer Court upheld the denial of a motion to amend to assert an FCA qui tam individual capacity claim against a government official where relator did not allege that the official acted outside of his official capacity. The court explained:

> In determining whether a state official may be liable for money damages in his individual capacity, . . . [w]e should look at whether the alleged conduct of the defendant was "outside of [his] official duties." . . . . Relator has not alleged

5

. . . how he acted outside those duties by issuing eligibility
standards which allegedly conflicted with state regulations.

Gaudineer, 269 F.3d at 936-37; see also, U.S. ex rel Hixson v. Health Mgmt. Sys., Inc.,
657 F.Supp. 2d 1039, 1058 (S.D. Iowa 2009), aff'd 613 F.3d 1186 (8th Cir. 2010)
(dismissing individual capacity FCA claims against state officials which did not allege
that violations of federal law were "carried out by individual officials not pursuant to any
state policy."). The SAC's allegations demonstrate that LP acted in his official capacity.
See Dkt 124, ¶¶76, 83, 85, 100-04, 110, 137, 142-47, 181-85, 191-98.

WR argues that because Government Defendants "did not file false claims in
their official capacities," they are individually liable for the NYFCA claim, which relates to
the R&B fees. Dkt 114-1, 93; Dkt 124, ¶272. To the contrary, everything LP is alleged
to have done in connection with the R&B fees was done on behalf of the state, in an
official capacity. Dkt 124, ¶¶124-38. Federal cases barring individual capacity FCA
claims against government officials absent allegations of personal profit or conduct
outside of their official duties apply to NYFCA claims because the NYFCA "is nearly
identical to the FCA in all the material respects." U.S. ex rel. Assocs. Against Outlier
Fraud v. Huron Consulting Grp., Inc., 929 F.Supp. 2d 245, 256 (S.D.N.Y. 2013).

WR erroneously alleges that a majority of courts have allowed individual capacity
FCA qui tam claims against government officials that plead that the officials presented
false claims to the U.S. government. Dkt 114-1, 90 (relying on Stoner v. Santa Clara
County Office of Education, 502 F.3d 1116 (9th Cir. 2007)). Gaudineer, the only other
Circuit Court ruling addressing this issue, adopted the opposite conclusion. 269 F.3d at
936-937. Stoner ignores Graber and the other cases requiring an allegation of personal
gain to state an individual capacity FCA claim against government officials.

## WR CANNOT ETHICALLY PURSUE HIS QUI TAM CLAIMS

We argued that WR's qui tam claims must be dismissed because he pursues them in violation of the New York Rules of Professional Conduct ("NY Rules").  Dkt 108, 9-16.  "Disclosure of confidential information in order to collect a whistleblower bounty is unlikely, in most instances to be ethically justifiable."  NYCLA Comm. on Prof'l Ethics, Formal Op. 746 (2013) ("Opinion 746"), available at https://www.nycla.org/siteFiles/Publications/Publications1647_0.pdf.  WR states that Opinion 746 concerns "obligations of corporate lawyers to their Wall Street clients" and "has no application here."  Dkt 114-1, 120 n.80.  However, Opinion 746 is not limited to "corporate lawyers," and does not support WR's claim that he has fewer ethical constraints than "corporate lawyers." Its analysis of attorneys' obligations to maintain confidences is not limited to "corporate lawyers."  NY Rule 1.13 applies to government lawyers like WR.   NY Rules of Prof'l Conduct R. ("NY Rule") 1.13, cmt. 9 (2014). Opinion 746 explains:

> New York RPC 1.13 . . . requires an attorney aware of corporate misconduct that constitutes a violation of law . . . to take reasonable measures within the organization to prevent harm to the organization, but does not contain independent support for reporting outside the organization if such reporting might result in disclosure of confidential information in violation of Rule 1.6 . . . Thus, reporting out is circumscribed under New York law to those instances permitted in RPC 1.6(b).

Opinion 746 p. 8.   WR is bound by NY Rule 1.13, so could only "report out" if allowed by NY Rule 1.6(b).

WR argues that his disclosures "meet[ ] the [NY Rule 1.6(b)(2)] 'prevent a crime' test since . . . [the allegedly criminal] false certifications are ongoing."  Dkt 114-1, 115.

However, Rule 1.6(b)(2) does not permit a lawyer "to disclose a client's past criminal conduct."  Roy Simon, <u>Simon's N.Y. Rules of Professional Conduct, Annotated</u> 215 (2013 ed. 2012).  By suing for a <u>qui tam</u> bounty instead of reporting the "crime" to a prosecutor, WR violated Rule 1.6(b)(2), which "restricts the lawyer's disclosure to those the lawyer believes must know in order to prevent the crime from taking place.  This choice includes the possible victim, . . . the victim's attorney, the police, the District Attorney, or anyone else in a positon to prevent the crime." <u>Simon's</u>, at 216.  WR's disclosures in this lawsuit are to collect a bounty, not prevent a crime, and thus barred by Opinion 746.

WR asserts that NYFCA §191(2) authorizes his disclosures of confidential information.  Dkt 114-1, 108.  This argument fails because §191(2) authorizes disclosures "for the sole purpose of furthering efforts to stop . . . violations of this article." WR's disclosures are to gain a <u>qui tam</u> bounty and thus not solely to stop NYFCA violations.  Also, WR's NYFCA <u>qui tam</u> claim relates only to R&B fees. Dkt 113-2, ¶¶271-77.  Thus, at most, §191(2) would only authorize disclosure relating to R&B fees.  Finally, nothing in §191(2) suggests that it supersedes the NY Rules, which are not a "contract" or a "duty owed to the employer" but instead define a lawyer's duty to the client.

WR says that he is free to pursue his <u>qui tam</u> claims since he was "never an attorney for any of the defendants."  Dkt 114-1, 108-12.  Allegations in the SAC contradict this:  WR was UIAB "General Counsel" and a "key advisor" in <u>Barcia</u> who formulated strategy to "achieve compliance with the consent decrees in . . . <u>Barcia</u> and end it." Dkt 113-2, ¶¶24, 139-51.  LP is UIAB Chair, and Smith was Commissioner of

the New York State Department of Labor ("DOL").   Dkt 124, ¶¶9, 10.   Named defendants in <u>Barcia</u> "included the Commissioner of Labor and the [UIAB] Chair."   <u>Id.</u>, ¶28.   A suit against a government official in her official capacity "is a suit against the official's office."   <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989).   As UIAB "General Counsel" and a "key advisor" to the UIAB in <u>Barcia</u>, WR was a lawyer for LP and Smith, <u>Barcia</u> defendants he now sues in their official capacities.   Dkt 124, ¶15. Because WR is suing LP and Smith in their official capacity, and because he was their lawyer in connection with <u>Barcia</u>, WR is now suing his former clients in violation of the obligations imposed by the NY Rules.   According to WR, his "relationship was with the UIAB as an entity, not with its Chair," and that LP, "by arguing that Rold was his attorney, equates his individual positons as Chair of the Appeal Board with the Appeal Board itself."   Dkt 114-1, 110.[2]   Not so.   WR represented the parties in <u>Barcia</u>, including the UIAB Chair and members in <u>Barcia</u>.   Dkt 124, ¶28.   WR argues that litigating this case would breach no confidences because "none of the defendants were former 'clients.'"   Dkt 114-1, 114.   This is wrong:  LP and Smith were WR's former clients.

WR argues that the NY Rules do not bar his <u>qui tam</u> claims because, in 2009, LP changed WR's duties to exclude him from <u>Barcia</u> negotiations and eliminate his role as UIAB legal advisor.   <u>Id.</u>, 111.   WR began working for the UIAB in September, 2007.   Dkt 124, ¶27.   That he lost duties in 2009 is of no moment, because he represented LP, Smith, and the UIAB until 2009.

---

[2] WR's brief contradicts itself here, asserting at the top of the page that "Polletta does not . . . contend . . . that Rold represented him," and asserting several lines below that Polletta "argu[ed] that Rold was his attorney."   Dkt 114-1, 110.

Even though WR represented Smith and LP in <u>Barcia</u> and is now suing them in their official capacity, he argues that he did not "switch sides" because "to the extent he acted as an attorney, . . . [he acted] in the best interests of the UIAB, . . . is not now suing the UIAB," and has "maintained his loyalty."  Dkt 114-1, 112.  In <u>Barcia</u>, however, WR represented the UIAB Chair and the Commissioner of Labor, each of whom he now sues in their official capacity.  WR has switched sides and not maintained his loyalty.

WR asserts he will not use "confidential information" because "virtually all of the information Rold learned was acquired in his administrative capacity [and] most of it was already [publicly] known."  <u>Id.</u>, 114.  How WR learned information is not relevant:  if it is "confidential information" under Rule 1.6, he can't disclose it.   While "most of" the information may be public, WR must maintain the confidentiality of all non-public confidential information.   WR even insists that "defendants have not shown that prosecution of this <u>qui tam</u> case would require disclosure of 'confidential information.'"  <u>Id.</u>, 114.  That argument is defeated on the face of the SAC.  WR's first <u>qui tam</u> claim revolves around Government Defendants' legal strategy in <u>Barcia</u>, hence litigating that claim will necessarily result in disclosure of that strategy.

WR argues that (i) defendants have not proved that the elements of an attorney/client privilege have been met, (ii) "there are no sworn statements by clients invoking the privilege," and (iii) there are no "particular statements about what communications defendants maintain are privileged, despite plaintiff-relator requests."  <u>Id.</u>, 116-17.  This argument fails.  First, LP and Smith were, in their official capacities, WR's clients, and both, through counsel, invoked the privilege.  <u>See</u> Dkt 108, 15-16; Dkt 106-1, 14-15.  Second, they do not seek to bar only disclosure of material protected by

the attorney client privilege, but instead seek to bar disclosure of "confidential information," which includes material "likely to be . . . detrimental to the client if disclosed," and "that the client has requested be kept confidential." NY Rule 1.6. It would be "detrimental" to <u>Barcia</u> defendants if their strategy is disclosed, and in their prior memoranda in this case LP and Smith asked that this information be kept confidential.

Finally, WR argues that because "defendants have waived any privilege" he may disclose his former clients' confidences with impunity. Dkt 114-1, 117-18. WR tacitly concedes that <u>Barcia</u> defendants did not expressly waive their privilege. Instead, WR claims implied waiver based on his disclosure of allegedly privileged material and the <u>Barcia</u> defendants' failure to then seek to seal that material. <u>Id.</u> However, implied waiver is available only where "the privilege holder 'asserts a claim that in fairness requires examination of protected communications,'" <u>In re Grand Jury Proceedings</u>, 219 F.3d 175, 182 (2d Cir. 2000) (internal emphasis omitted), and this did not happen here.

## CONTRARY TO WR'S ASSERTION, THERE IS NO INDIVIDUAL LIABILITY FOR THE FCA AND NYFCA RETALIATION CLAIMS

WR's FCA and NYFCA retaliation claims failed as to LP because there is no individual liability for those claims. Dkt 108, 16-18. Despite acknowledging that this Court has ruled that there is no individual liability for an FCA retaliation claim, WR argues that "none of the cases defendants cite consider . . . a former state employee – relator . . . [with] a claim against state officials . . . who is also a victim of retaliation at their hands." Dkt 114, 101. He ignores two 2014 decisions finding no individual liability where FCA-relators brought retaliation claims against state employee supervisors. <u>Monsour v. New York State Office for People with Developmental Disabilities</u>, No. 1:13-

11

CV-0336 (TJM)(CFH), 2014 WL 975604, at *10-11 (N.D.N.Y. Mar. 12, 2014); Taylor v. New York State Office for People with Developmental Disabilities, No. 1:13-CV-740 (NAM/CFH), 2014 WL 1202587, *10 (N.D.N.Y. Mar. 24, 2014).

WR cites Huang v. Rector and Visitors of Univ. of Va., 896 F. Supp. 2d 524, 548 n.16 (W.D. Va. 2012), and U.S. ex rel. Moore v. Cmty. Health Servs., Inc., Civil No. 3:09cv1127 (JBA), 2012 WL 1069474 at *9 (D. Conn. Mar. 29, 2012) for the proposition that supervisors can be liable for an FCA retaliation claim.  Dkt 114, 102.  Moore "has been rejected both within and outside this Circuit."  Monsour, 2014 WL 975604 at *11 (citing Fisch v. New Heights Acad. Charter Sch., No. 12 Civ. 2033 (DLC), 2012 WL 4049959 at *4 (S.D.N.Y. Sept. 13, 2012).  Huang did not address the issue because defendants did not raise it in a timely fashion.  896 F.Supp. 2d at 548 n.16.

The NYFCA does not provide a retaliatory discharge claim against supervisors. Monsour, 2014 WL 975604 at *11; Landfield v. Tamares Real Estate Holdings, Inc., No. 105149/11, 2012 WL 3135052 at *3 (N.Y. Sup. Ct. July 23, 2012).  WR argues that because NYFCA §191 "protects 'private or *public*' employees against retaliation," it allows retaliation claims against supervisors.  Dkt 114, 102-03.  This argument is inconsistent with the above cited case law.  Also, §191 is, in relevant part, nearly identical to the earlier version of FCA §3730(h), which did not allow claims against supervisors.  Yesudian ex rel. U.S. v. Howard Univ., 270 F.3d 969, 972 (D.C. Cir. 2001).

We explained that WR's FCA and NYFCA retaliation claims failed because they did not allege that LP knew that WR engaged in FCA protected activity.  Dkt 108, 18-20. In response, WR ignores the applicable case law and asserts that his "grievance actually invokes qui tam specifically."  Dkt 114-1, 78-79.  WR filed the grievance after he

12

was fired, Dkt 124, ¶202, so it could not have put defendants on notice before WR's termination that he was pursuing a <u>qui tam</u> claim.

<u>THE PROCEDURAL AND SUBSTANTIVE DUE PROCESS CLAIMS</u>

We argued that WR's procedural due process claim fails because he was an at-will employee with no constitutionally protected right to his job. Dkt 108, 26-27. WR ignores this, asserting instead that he was denied "meaningful" due process because "defendant Cuomo has failed to resolve his grievance . . . for over three years."  Dkt 114-1, 85.  WR's reliance on <u>Harris v. Mills,</u> 572 F.3d 66, 75-76 (2d Cir. 2009) is misplaced.  In <u>Harris</u>, the Court upheld the denial of the due process claim because an Article 78 proceeding provides an adequate post-termination remedy, a remedy which was available to WR.  572 F.3d at 75.  Further, WR both admits he was an at will employee, Dkt 113-1, Becker Declaration, ¶4(c), and cites no authority to support the notion that he had a property interest in his job.  Thus, was entitled to no remedy beyond an Article 78 proceeding.

WR ignores applicable case law, and asserts that Government Defendants' "conspiracy" gave rise to a substantive due process claim. Dkt 114-1, 84-85.  WR is wrong.  Termination of a government employee does not give rise to a substantive due process claim. Dkt 108, 26.  WR cites no cases to the contrary.

<u>WR'S CLAIM UNDER THE STATE CONSTITUTION</u>

WR's claim under the Constitution of the State of New York ("NY Constitution") is time barred.  Dkt 108, 31.  WR ignores this argument and thus abandoned this claim. <u>Di Giovanni v. Beth Israel Med. Ctr.</u>, 651 F. Supp.2d 193, 208 (S.D.N.Y. 2009).  This claim also fails because courts do not imply claims under the NY Constitution except in circumstances not found here.  <u>Allen v. Antal</u>, No. 12 Civ. 8024 (NSR), 2014 WL

2526977 at *10 (S.D.N.Y. Mar. 13, 2014). WR argues that the NY Constitution gives him greater speech and due process rights than does the U.S. Constitution, Dkt 114-1, 86, but speech retaliation claims and substantive due process claims under the NY Constitution are governed by the rules that apply to such claims under the U.S. Constitution. Rotundo v. Village of Yorkville, No. 6:09-CV-1262, 2011 WL 838892 at *4 n.8, *7 n.10, (N.D.N.Y. Mar. 4, 2011).

<u>WR'S CLAIM UNDER 42 U.S.C. §1985(2)</u>

WR's claim under §1985(2) fails because the SAC did not plead that his conduct was protected by §1985(2). Dkt 108, 27-28. As a party's agent, WR says he was protected by §1985(2). Dkt 114, 86. However, §1985(2) protects parties, not their agents. Dandar v. Church of Scientology Flag Serv. Org., 551 Fed. App'x 965, 967 (11th Cir. 2013). WR argues he was protected by §1985(2) as a "potential witness," Dkt 114-1, 81, but absent an allegation that anyone planned to call WR to testify, such speculation "is insufficient to afford . . . protection under . . . §1985(2)." Geaney v. McCarron, No. 01 Civ. 9260 (BSJ), 2003 WL 1701975 at *4 (S.D.N.Y. Mar. 31, 2003). WR cites Malley-Duff & Assoc., Inc. v. Crown Life Insurance Co., 792 F.2d 341, 355 (3d Cir. 1986), Dkt 114-1, 82, which held that §1985(2) protects "a person asked to provide discovery," but WR does not allege he was asked to do so. WR cites Irizarry v. Quiros, 722 F.2d 869, 870-73 (1st Cir. 1983) for the proposition that §1985(2) protects people who file complaints under federal statutes. Dkt 114-1, 82. Irizarry plaintiffs stated a §1985(2) claim because they were denied reemployment in retaliation for previously instituted federal actions. 722 F.2d at 871. Unlike the Irizarry plaintiffs, WR was not retaliated against after bringing a federal claim. Finally, WR's claim under "the uncodified provision Section 2 of the Civil Rights Act of 1871" fails as to LP because this

14

provision applies only to attempts to "prevent the actual exercise of authority" of the federal government, <u>Baldwin v. Franks</u>, 120 U.S. 678, 693 (1887), and WR does not allege that LP engaged in such conduct.

## WR'S FIRST AMENDMENT CLAIM FAILS

WR's First Amendment claim failed because the speech at issue was made pursuant to his official duties.  Dkt 108, 21-25.  WR argues that as there is "room for serious debate" on whether that speech was pursuant to his duties, he is entitled to discovery about his duties.  Dkt 114-1, 70-71.  However, whether WR spoke as an employee is "largely a question of law for the court," <u>Jackler v. Byrne</u>, 658 F.3d 225, 237 (2d Cir. 2011).  There is no need for discovery on his job duties – the SAC lays them out and shows WR spoke as an employee.

"Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421-22 (2006).  Until a few months before his termination, WR served as the UIAB's General Counsel.  In that role, he was a "key agent" and "key advisor" to the <u>Barcia</u> defendants, whose "primary mission [was] . . . to achieve compliance with the consent decrees in <u>Barcia</u> . . . and end it." Dkt 124, ¶¶5, 24, 139.  WR supervised the judges "whose delivery of due process determined compliance with . . . <u>Barcia</u>." <u>Id.</u>, ¶46.  WR participated in negotiations to modify the <u>Barcia</u> consent decree, and formulated strategy for those negotiations.  <u>Id.</u>, ¶¶139-45.  But for WR's official duties he would not have known about <u>Barcia</u> or the impact of the Amelioration Plan.  As WR's <u>Barcia</u>-related speech owed its existence to his official duties, it is unprotected.  <u>Garcetti</u>, 547 U.S. at 421-22.

15

WR cannot rely on Weintraub v. Bd. of Educ. of the City School Dist. of N.Y., 593 F.3d 196 (2d Cir. 2010).  Dkt 114-1, 71.  After the issuance of Garcetti, the Weintraub District Court reconsidered its initial decision denying defendants' motion for summary judgment and evaluated three types of speech about an incident for which plaintiff could "plausibly claim retaliation":  a conversation with a supervisor, a conversation with co-workers, and a grievance.  Weintraub v. Bd. of Educ. of N.Y., 489 F.Supp. 2d 209, 214 (E.D.N.Y. 2007).  On reconsideration, the court granted summary judgment as to the first and third categories of speech.  Id. at 220.  The Second Circuit took an interlocutory appeal "limited to . . . whether the First Amendment protects his filing of a grievance" and found that the grievance was not protected because it was a "part and parcel of [plaintiff's concerns] about his ability to 'properly execute his duties.'"  593 F.3d at 203. As WR's job duties included supervising judges and Barcia compliance, and because his speech about the Amelioration Plan related to Barcia compliance and those judges' duties, that speech was "part-and-parcel of his concerns" about his ability to "properly execute his duties" and thus unprotected.  Id.  WR also argues that his speech was protected because his complaint to "an independent state agency" could have been made by any citizen.  Dkt 114-1, 71-72.  WR's complaints about Barcia and the Amelioration Plan have no "citizen analog."  No ordinary citizen could send a memo to the UIAB on how the Amelioration Plan would affect the workload of the judges that WR supervised.

WR relies heavily on Jackler.  Dkt 114-1, 71-73.  "The Second Circuit in Jackler pointedly described the protected speech as the refusal to retract the truthful report and file a false one," and "did not address whether, let alone hold that Jackler's original,

truthful report would have constituted protected speech." Matthews v. City of N.Y., 957 F.Supp. 2d 442, 456 (S.D.N.Y. 2013) (emphasis in original).   Matthews found that Jackler did not apply where plaintiff "made a series of truthful reports about his concerns," because "unlike Jackler, he was neither compelled to retract those statements nor to file a false report." Id.  WR was not compelled to retract reports or issue false reports, so Jackler does not help him.

Similarly, WR cites Rosenblatt v. City of New York, No. 05 Civ. 5521 (GEL), 2007 WL 2197835 (S.D.N.Y. July 31, 2007) to no avail.  Rosenblatt "held that the plaintiff's complaint constituted protected speech, not because it was made to an outside agency, but rather because it involved issues that did not fall within the parameters of her official duties." Rodriguez v. Int'l Leadership Charter Sch., No. 08 Civ. 1012 (PAC), 2009 WL 860622 at *3 (S.D.N.Y. Mar. 30, 2009).  As discussed above, WR's complaints were solely about topics "within the parameters [of his] official duties." Id.  WR supervised the UIAB judges, including Mammen.  Dkt 124, ¶40.  After UIAB judges told him that Mammen was changing their legal work and forging their signatures, WR investigated, found the allegations to be true, reported this to LP and Smith, wrote a report on his findings, and asked that Mammen be terminated. Id., ¶¶159-64.  As UIAB decisions tainted by Mammen's misconduct were on review before the Third Department, WR "arranged for the decisions . . . to be withdrawn," filed an ethics complaint with the Third Department, and delivered his Mammen report to the Inspector General ("IG"). Id., ¶¶166-67.

To determine if this speech is protected, we look not to whether it was "made to an outside agency" but to whether it "involved issues" "within the parameters" of Rold's

17

"official duties." Rodriguez, 2009 WL 860622, at *3. "Garcetti . . . defined speech made 'pursuant to' a public employee's job duties as 'speech that owes its existence to a public employee's professional responsibilities.'" Weintraub, 593 F.3d at 201. The Mammen-related speech is unprotected because, but for his job, WR would not have learned of Mammen's misdeeds or reported them to the IG and the Third Department. That civilians report misconduct to the IG is not dispositve. Dkt 114-1, 74.

WR's citations to Casey v. West Las Vegas Independent School District, 473 F.3d 1323 (10th Cir. 2007) and Anemone v. Metropolitan Transportation Authority, 629 F.3d 97 (2d Cir. 2011), Dkt 114-1, 73, 75-77, are ineffectual. Casey holds that a report of misconduct to an outside agency in contravention of a superior's directives is not automatically cloaked with First Amendment protection: such speech is protected only if it is not part of the speaker's job. 473 F.3d at 1331-32. Similarly, Anemone holds that "[w]hen a government employee . . . engages in speech pursuant to his official duties, the fact that he persists in such speech after a supervisor has told him to stop does not, without more, transform his speech into protected speech." 629 F.3d at 116. Under Casey and Anemone, that WR spoke about Mammen and the Amelioration Plan after being told to stop does not transform that speech into protected speech.

WR relies heavily on Dahlia v. Rodriguez, 735 F.3d 1060 (9th Cir. 2013). Dkt 114-1, 73-75. Dahlia held "that, generally, 'when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job," and not protected. 735 F.3d at 1074. As Rold's "speech" about Barcia and the Amelioration Plan was made "up the chain of command" it is unprotected under Dahlia. Dkt 124, ¶¶150, 181, 183, 190, 194.

18

WR argues that his report on Mammen to the IG and his Third Department complaint was protected since it was made contrary to his supervisors' directives. Dkt 114-1, 70-72. However, under <u>Casey</u> and <u>Anemone</u>, this does not transform WR's job-related speech into protected speech. WR's IG report and Third Department complaint "owes its existence" to WR's "professional responsibilities." <u>Garcetti</u>, 547 U.S. at 421. To see if speech "falls within . . . plaintiff's job duties," one looks to "the impetus for [the] speech," its setting and subject matter and whether it "derived from special knowledge obtained during the course of . . . employment." <u>Dahlia</u>, 735 F.3d at 1074, n.13. The "impetus" and subject matter for this speech was misconduct by a judge WR supervised. The setting of the speech was the court considering UIAB decisions tainted by Mammen's misconduct, which occurred while WR supervised him. WR learned of Mammen's misconduct from judges he supervised: but for his job, he would have never known of that misconduct or needed to confront it. WR's claim that defendants improperly convert "<u>Garcetti's</u> exception for speech made 'pursuant to job duties' to speech about information learned during the job, regardless of job duties," Dkt 114-1, 74, is wrong, because the source of the information upon which the speech is based is a key factor in determining whether the speech is protected. <u>Dahlia</u>, 735 F.3d at 1074 n.13.

<u>THE ELEVENTH AMENDMENT BARS ALL OFFICIAL CAPACITY CLAIMS</u>

We argued that WR's non-FCA claims against LP in his official capacity failed on Eleventh Amendment ground. Dkt 108, 20-21. WR ignored the cases we cited, Dkt 114-1, 89-98. For the reasons stated in our opening brief, his non-FCA official capacity claims against LP must be dismissed on Eleventh Amendment grounds. Also, the

official capacity FCA and NYFCA claims against LP are barred on sovereign immunity grounds. Id., 8-9.

CONCLUSION

For the reasons articulated above and in our opening brief in support of our motion to dismiss, all claims against LP should be dismissed with prejudice.

Dated: October 16, 2014
      New York, New York

           MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By: _____
           Hanan B. Kolko (HK 1307)
           Richard F.X. Guay (RG 8848)
           Melissa S. Woods (MW 8571)
           1350 Broadway, Suite 501
           P.O. Box 822
           New York, New York  10018-0026
           Telephone:  212-239-4999
           Facsimile:  212-239-1311

           *Attorneys for Defendant Leonard D. Polletta*