LAW OFFICES OF JANE BECKER WHITAKER
PO BOX 9023914
SAN JUAN, PUERTO RICO 00902-3914
787 754-9191
787 764-3101
janebeckerwhitaker@gmail.com
janebeckerwhitaker@yahoo.com

**Of Counsel**
**A.J. Bennazar**

416 Ponce de León Ave.
Hato Rey, PR 00918

January 22, 2016

Hon. Loretta A. Preska
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Barcia v. Sitkin,* 79 Civ. 5831 (LAP)
*United States ex rel. New York ex rel.*
*Rold v. Raff & Becker, LLP, et al.*, 14 Civ. 4393 (LAP), formerly EDNY CV 11-6374

Dear Chief Judge Preska:

Two days ago, the Court asked us to report about the effect on Judge Rold's lawsuit of the settlement discussions you directed in the *Barcia* litigation. Judge Rold opposes any stay of proceedings in his own case pending discussions in *Barcia*. He was fired six years ago and brought this action in 2011; discovery has not commenced and preliminary settlement discussions suggest that only the Court's continued good offices are likely to bring the parties together. Settlement of both matters is related – as Defendants in *Rold* insisted when they jointly moved for change of venue in 2012 and asked that both be assigned to the same judge – and they can occur in tandem.

Judge Rold respectfully asks the Court to consider his interim proposal for advancement of judicial disengagement in *Barcia*: suspend the operation of the consent decree, including the collusive "Amelioration Plan," for six months, to be followed by an independent audit of the UIAB's performance after its judges have been permitted to do their jobs for a test period unimpeded by Raff & Becker's "monitoring."

There is already a quarterly state-federal monitoring system of "appeals quality" of all states' unemployment hearings through the USDoL that is almost identical to the *Barcia* "checklist" (ETA Form 9507 – attached). (New York has scored 95% or higher for the last ten quarters.) Although this system was faulted for small sample size in *Barcia v. Sitkin*, 367 F.3d 87, 104 (2d Cir. 2004), the independent audit applying these criteria could examine any sample size the court

Hon. Loretta A. PreskaRe:  *Barcia; U. S. ex rel. Rold*
Chief United States District Judge
January 22, 2016
Page 2

determines adequate to measure UIAB's performance. The criteria are the benchmarks that will apply after *Barcia* is over, and their comprehensive reach serves the purpose of the consent decree to provide far more than a constitutional "floor" for due process.

A distinct advantage of this proposal is that it provides for an independent audit uninfluenced by any conflict of Raff & Becker in perpetuating their own involvement (and fees), and it permits review of the agency after its judges and their supervisors have been permitted to spend their time on current cases instead of diversion to re-examining old ones long closed. Under the "Amelioration Plan," for example, one senior judge reported spending 23 hours (in a 140-hour month) listening to tapes of eight untranscribed hearings to complete "audits" of old cases that were never appealed. This time diversion -- which is typically required of all senior judges under the Amelioration Plan -- excludes preparation of the audit reports, response to letters about them, and myriad other *Barcia* requirements of the consent decree and the only partially implemented Amelioration Plan. Because of the federal government's interest in assuring that it receives accurate requests for federal grant money and not the false claims it continues to receive from Government Defendants, the Court may want to have the United States Attorney's input on this proposal.

The standards for modification of consent decrees under *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) were substantially relaxed in *Horne v. Flores*, 557 U.S. 433 (2009), which interpreted "changed circumstances" broadly to expand the court's discretion and to include "new policy insights" and whether the enjoined party continued to engage in an "ongoing violation of federal law." *Id.* at 454.[1] Unlike here, where the Court noted defendants' compliance with the Constitution in 1983, the judgment in *Horne* was fully litigated. The allegations of collusion in the consent decree (*id.* at 447-50) occurred after the state executive defendants joined the plaintiffs in challenging the legislature's funding for English language in schools. Here, the costs of *Barcia* have been concealed from both the federal government and the New York legislature; and the detail of the false attorneys' fees claims have never been disclosed to the New York Comptroller.

Moreover, *Horne* requires flexibility so that "'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant." *Horne* at 2595 *quoting Frew v. Hawking*, 540 U.S. 431, 442 (2004). *Horne* was cited in *Calderon v. Wambua*, 2012 WL 1075840 * p. 15 (S.D.N.Y., March 28, 2012 (LAP)), where the court modified a consent decree, recognizing that individualized due process protections at the insistence of the plaintiff class had become duplicative. Judge Rold's suggestion of a cooling-off period followed by an independent audit merely allows the Court to determine if the consent decree should be modified or if it has any remaining utility in the case here. This approach is similar to the interim measures suggested by the U.S. Attorney in *U.S.A. v. Int'l Bhd. of*

---

[1] For a recent analysis of *Horne* and its implications, *see* Kelley, "Saving 60(b)(5):The Future of Institutional Reform Litigation," 125 YALE L. J. 272 (2015).

Hon. Loretta A. Preska                                               Re:  *Barcia; U. S. ex rel. Rold*
Chief United States District Judge
January 22, 2016
Page 3

*Teamsters*, resolving another long-standing consent decree dispute.  (S.D.N.Y. Case No. 88 Civ. 4486 (LAP), docket entries 4274, 4358 and 4486).

Judge Rold related to us an example of how judges' performance standards in the consent decree have been interpreted by Raff & Becker.  As Chief Judge, he attended a hearing in which only the claimant appeared with her attorney, who offered as an exhibit a physician's note explaining an employee absence.  The ALJ then "identified" the exhibit the attorney had just offered and asked if he had any objection to it.  When Judge Rold later asked the ALJ's supervisor the reason for this inquiry, he was told that it was a "checklist violation" not to identify each exhibit and to ask on the record if any party had an objection, even if the offering party were the only one present.  If the ALJ failed to do so, and an appeals judge failed to note it, both omissions were subject to a citation by Raff & Becker on checklist audit – and would become allegations of consent decree non-compliance.  Similar examples abound, along with Raff & Becker's ever-expanding interpretation of checklist scope, and Government Defendants' acquiescence in same.

The current operation of the *Barcia* consent decree not only diverts federal grant money to unintended purposes; it fosters outrageous false claims for attorneys' fees – over $25 million and counting.  A reasonable interim solution to evaluate the consent decree is to permit the agency to operate for a test period without Raff & Becker interference, but subject to the same checks and balances governing the other 49 states, and then to audit its performance independently.

In addition to diverting judges' federally funded time, Raff & Becker's monitoring actually reduces their effectiveness as judicial officers, requiring them constantly to question their own work and that of their colleagues. Raff & Becker have had 30 years to try to correct the "failures" they insist are injuring the *Barcia* plaintiff class. Simply put, without removing them for a period, it is nearly impossible to assess the degree to which their intrusive involvement is the problem at the UIAB.

Respectfully,

Jane Becker
Steven A. Rosen

Attachment

cc:   Counsel of Record
      Pierre Armand, Esq.
      Scott Spiegelman, Esq.

*ET Handbook No. 382, 3rd Edition*
*Handbook for Measuring UI Lower Authority Appeals Quality*

| PLEASE SEE ET HANDBOOK 401, UI Reports Handbook for the ETA 9057 Lower Authority Appeals Quality Review report. A facsimile of the State Evaluation Score Sheet is listed here. | | | | | | |
|---|---|---|---|---|---|---|
| 1. EXPLANATION | G - 6 | F - 3 | U - 0 | D - 6 | | G = GOOD; F = FAIR; U = UNSAT; D = DID NOT OCCUR |
| 2. OPENING STATEMENT | G - 6 | F - 3 | U - 0 | | | |
| 3. EXHIBITS | G - 6 | F - 3 | U - 0 | D - 6 | | COMMENTS |
| 4. WITNESS ORDER | G - 6 | F - 3 | U - 0 | D - 6 | | |
| 5. ORDER OF WITNESSES' TESTIMONY | G - 3 | F - 1 | U - 0 | | | |
| 6. QUESTION OWN WITNESS | G - 9 | F - 3 | U - 0 | D - 9 | | |
| 7. CLEAR LANGUAGE BY H.O. | G - 6 | F - 3 | U - 0 | | | |
| 8. COMPOUND QUESTIONS | G - 6 | F - 3 | U - 0 | | | |
| 9. CLARIFIED TESTIMONY | G - 6 | F - 3 | U - 0 | D - 6 | | |
| 10. CONFRONTATION | G - 9 | | U - 0 | D - 9 | | |
| 11. CROSS-EXAMINATION | G - 9 | F - 3 | U - 0 | D - 9 | | |
| 12. REPETITIVE TESTIMONY | G - 3 | F - 1 | U - 0 | | | |
| 13. LEADING QUESTIONS | G - 6 | F - 3 | U - 0 | | | |
| 14. INTERRUPTIONS | G - 6 | F - 3 | U - 0 | D - 6 | | |
| 15. "OFF THE RECORD" | G - 6 | F - 3 | U - 0 | D - 6 | | |
| 16. INTERPRETERS | G - 6 | F - 3 | U - 0 | D - 6 | | |
| 17. CONTINUANCES | G - 3 | F - 1 | U - 0 | D - 3 | | |
| 18. CONCLUSION OF HEARING | G - 6 | F - 3 | U - 0 | | | |
| 19. WITHIN SCOPE OF NOTICE | G - 9 | | U - 0 | | | |
| 20. GRATUITOUS COMMENTS | G - 6 | F - 3 | U - 0 | | | |
| 21. ATTITUDE | G - 6 | F - 3 | U - 0 | | | |
| 22. BIAS AND PREJUDICE | G - 9 | | U - 0 | | | |
| 23. OBTAIN AVAILABLE EVIDENCE | G - 9 | F - 3 | U - 0 | | | |
| 24. ISSUE STATEMENT | G - 3 | | U - 0 | | | |
| 25. FINDINGS SUPPORTED BY EVIDENCE | G - 9 | | U - 0 | | | |
| 26. FINDINGS OF FACT | G - 9 | F - 3 | U - 0 | | | |
| 27. NECESSARY CONCLUSIONS INCLUDED | G - 6 | | U - 0 | | | |
| 28. LOGICAL REASONING | G - 6 | F - 3 | U - 0 | | | |
| 29. FORM AND STYLE | G - 3 | F - 1 | U - 0 | | | |
| 30. DECISION STATES LEGAL EFFECT | G - 3 | F - 1 | U - 0 | | | |
| 31. UNDERSTANDABLE DECISION | G - 6 | F - 3 | U - 0 | | | |
| 32. TOTAL POINTS SCORED (OPTIONAL) | | | | | | |
| 33. INTENT OF DECISION     A - ALLOW; D - DENY | | | | | | |
| 34. EFFECT ON APPEALED DETERMINATION. A - AFFIRM; R - REVERSE; M - MODIFY | | | | | | |
| 35. DATE OF DECISION (MMDDYYYY) | | | | | | |
| 36. DATE IMPLEMENTED (MMDDYYYY) | | | | | | |
| 37. CASE MAT. STATUS: OK; TI(RECORDING INAUD.); TM(RECORDING MISS.); DM(DOCS. MISS.) IM (RECORDING INAUD. & DOCS. MISS.); MM (RECORDING & DOCS. MISSING) | | | | | | |
| 38. TIME REQUIRED FOR EVALUATION OF CASE IN MINUTES. | | | | | | |

March 2011