UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------x

UNITED STATES OF AMERICA, *ex rel.*, STATE OF NEW YORK, *ex rel.*, WILLIAM J. ROLD,

                          Plaintiffs,

                  v.

RAFF & BECKER, LLP, *et al*,

                          Defendants.

-------------------------------------x

14-cv-4393(LAP)

CORRECTED ORDER

LORETTA A. PRESKA, Senior United States District Judge:

  1.  The Court has reviewed the attached Settlement Agreement presented by Plaintiff and the Defendants M. Patricia Smith, Leonard D. Polletta, Colleen C. Gardner, and Peter M. Rivera, and approves and so orders it, including, as set out below, dismissal of Plaintiff's claims under the False Claims Acts and dismissal without prejudice of the claims of the United States and the State of New York under the False Claims Acts.  Because of reservation of rights by the sovereign, the Court finds that the settlements are in the public interest under 31 U.S.C. § 3730 (b)(1).  The objective of Plaintiff's False Claims Action was substantially achieved insofar as federal court involvement in the UIAB under *Barcia* has been substantially reduced.  This justifies the bifurcated dismissal consistent with federal and

1

state law.

2.    Upon Plaintiff's counsel's certification to the Court
that the Settlement Amount of $3,650,000 has been paid, which
shall be made upon receipt of payment, Relator's federal False
Claims Act claims and New York State False Claims Act claims
against M. Patricia Smith, Colleen Gardner, Peter Rivera, and
Leonard Polletta shall be dismissed with prejudice.

3.    Upon Plaintiff's counsel's certification to the Court
that the Settlement Amount of $3,650,000 has been paid, which
shall be made upon receipt of payment, Plaintiff's claims on
his own behalf under 42 U.S.C. §§1983, 1985, and 1988 and
pendent claims under the New York State Constitution shall be
dismissed with prejudice.

4.    New York Department of Labor Commissioner Roberta
Reardon, (and her successors) and Unemployment Insurance Appeal
Board Chair Geraldine A. Reilly (and her successors), in their
official capacities, are substituted as parties defendant to
assure compliance with the Settlement Agreement and with this
Stipulation, under F.R.C.P. 25(d).

5.    Subject to the Settlement Agreement and this Order,
payment under the Settlement Agreement shall be made within
thirty calendar days, excluding legal holidays, of the receipt of
the Medicare documents by the Office of the State Comptroller,
which the Court understands have been provided to the Office of

the Attorney General, and the voucher referred to in paragraph 4 of the Settlement agreement, and all other properly completed documentation, including the documentation referred to in Paragraphs 4 and 9 of the Settlement Agreement.  For the avoidance of doubt, nothing in this Order shall create new or modify the existing rights and obligations under the Settlement Agreement.

6.    The payment of the Settlement Amount is subject to the approval of all appropriate State officials, in accordance with N.Y. Public Officers Law § 17 and other laws.  Plaintiff and his counsel agree to execute and deliver all necessary and appropriate vouchers and other documentation requested with respect to obtaining such approval and effectuating payment, including but not limited to a notarized Affidavit of Status of Medicare Eligibility (the **"Medicare Affidavit")** and the attachments required by the Medicare Affidavit.  The State shall forward the required voucher (filled out by the Office of the Attorney General) promptly to Plaintiff's counsel and shall inform counsel immediately of any additional documentation that is required.  Plaintiff and Plaintiff's counsel acknowledge and understand that receipt of the fully executed Medicare Affidavit and its attachments is a prerequisite to payment of the Settlement Amount.  In the event such approval is not obtained, this Settlement Agreement shall be null, void, and of no further

force and effect.  The Court understands from counsel that all Medicare matters have been resolved and documentation thereof sent to the State and Defendants' counsel.

     7.  In the event that payment of the Settlement Amount is not made within thirty calendar days, excluding legal holidays, after receipt by the Office of the State Comptroller of all properly completed documentation, including the documentation referred to in Paragraphs 4 and 9 of the Settlement Agreement, and unless the Court finds that exceptional circumstances precluded such payment, interest on the unpaid portion of the Settlement Amount shall begin to run on the thirty-first day at a statutory rate pursuant to 28 U.S.C. § 1961.  If, prior to payment of the Settlement Amount, Plaintiff contests any amount claimed by Medicare due as a reimbursement (the **"Medicare Dispute")**, no interest shall accrue during the pendency of the Medicare Dispute, and the Settlement Amount shall only be paid upon a final resolution of the Medicare Dispute.  The Court understands that any and all Medicare Disputes have been resolved.

     8.  The parties never agreed that Defendants Cuomo and Schneiderman would be dismissed prior to payment.  Indeed, counsel for the law firm Defendants specifically noted that that is not how settlements are done.  The dismissal orders as to those Defendants shall be held by the Court in escrow pending

certification by Plaintiff's counsel of receipt of payment of the Settlement Amount.  Accordingly, "properly completed documentation" in paragraph 5 above does not include dismissal of Defendants Cuomo and Schneiderman.  Upon certification by Plaintiff's counsel of receipt of payment of the Settlement Amount, such dismissal orders shall be released from escrow, effective *nunc pro tunc*, December 31, 2017.

9.   Because: (1) defendants deny any liability for back or front pay or employment benefits; (2) defendants deny any liability for alleged false claims, and no disgorgement has been ordered of which Plaintiff may have claimed a "Relator's Share"; and (3) Plaintiff has been on disability until his voluntary resignation, the Court finds that all moneys paid on his behalf are compensatory damages for settlement of his claims for pain and suffering from physical injuries.

10.   The Court finds the following: Two reports, Dr. Charles Cornell's September 2010 surgical operative report and a November 2012 Independent Medical Examination ("IME") report to an insurance carrier, show that by the time of Judge Rold's surgery in August 2010, the condition of his right hip had deteriorated severely to the point of  "massive osteolysis," where his bones were dissolving, the cup portion of the ball and socket joint was completely dislodged, a "huge amount of metallosis" (abraded metal from his prosthetic hip) lined the entire joint space, and the

metal-burdened synovium, which normally keeps metal implants from
rubbing on bone, had to be completely excised along with much of the
soft tissue in the vicinity of the hip joint.  The defect found in
the joint after all of this excision was "massive."  Additional bone
had to be removed to make way for the new implant, and the surgeon
had to try several arrangements before finding one that seemed to
work.  After the surgery, Judge Rold's right leg was 3 centimeters
shorter than his left leg, and he consequently suffered severe pain
and disability.  The IME documents his condition as "degenerative"
and noted that Judge Rold needed "special crutches" (which he had
not been using) to "protect the area" while he awaited surgery
requiring a custom prosthesis.  Judge Rold's injuries occurred
gradually (not all at once, as with the original motor vehicle
accident), and the IME confirms this.

Based on Judge Rold's representation that he continued to
work at the UIAB in 2008 and 2009 despite his severe pain and
difficulty ambulating, and he did not seek surgical intervention
sooner because he dedicated himself in those years to complete
his mission at the UIAB – *inter alia,* bringing an end to *Barcia*
– and Rold's counsel's representation that an expert witness
would opine that had Judge Rold scheduled his surgery a year or
two earlier, the deterioration of his hip joint would not have
been so severe, and he would not have been disabled to the extent
he was or suffered such extreme pain, the Court finds that the

payments made to him in settlement of this action are solely compensation for physical injury.

    11.   Thus, the Complaint in this action is deemed amended pursuant to Federal Rule of Civil Procedure 15 (c)(1)(B) because it "arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading. . .". As a consequence, it is entirely reasonable for any settlement paid to Judge Rold to be characterized as non-taxable compensation for his physical injury.  *See* 26 C.F.R. §104-1 (c).

So Ordered.

March *14*, 2018

 

*Loretta A. Preska*

LORETTA A. PRESKA
Senior United States District Judge